[S. F. No. 2600. In Bank.—February 1, 1904.]

## EMILY C. THOMAS, Respondent, v. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Appellant.

LIFE INSURANCE—ACTION ON POLICY—PAYMENT OF PREMIUMS—BURDEN OF PROOF.—In an action on a life-insurance policy by a beneficiary, to whom it was payable in case of the death of the insured ''during the continuance of this policy,'' which admitted the payment of the

first premium, and appears to have been a valid and enforceable contract when issued, the burden of proof is not upon the plaintiff to prove future payments of premiums, which were conditions subsequent, of which the defendant might or might not avail itself to defeat a recovery, but is upon the defendant to prove facts showing that the policy had lapsed and become void. [McFarland, J., and Beatty, C. J., non-concurring.]

ID.—EVIDENCE—IMPEACHMENT.—Where the agent of the insurance company testified that he had had no conversation with the insured in regard to the policy and its reinstatement after December 10, 1898, the testimony of impeaching witnesses, the ground for which was properly laid, was admissible to show that after his death he said in the presence of the coroner and another witness, February 7, 1899, that he asked the deceased time after time to pay his premium, that he kept it going, or kept it up, hoping he would do it, but he did not, and that he spoke to him about it every time he saw him, and spoke to him about it the last time he saw him, only a few days ago.

ID.—ERRONEOUS INSTRUCTION—TIME OF TAKING EFFECT OF POLICY.—It was prejudicial error to instruct the jury that the policy did not go into effect until the date of its delivery, where by the terms of the policy the premiums were payable with reference to the date of its issuance, and a second premium was by its terms unpaid shortly prior to the death of the insured, which would not be payable at all if the premium dated from the delivery of the policy, and in respect to which there was no evidence of waiver.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion of the court.

George A. Rankin, for Appellant.

The burden was upon the plaintiff to show the payment of the premiums and the performance of all conditions devolving upon the insured. (Bacon on Benefit Societies and Life Insurance, sec. 454.) The policy lapsed by reason of the failure of the insured to remove the suspension of the policy as provided by its terms. (*Curtin* v. *Phœnix Ins. Co.*, 78 Cal. 622.) The court erred in allowing the evidence of the witnesses Mangrum and Hill. (*Crawford* v. *Transatlantic Fire Ins. Co.*, 125 Cal. 609.) The instruction that the premium became payable six months after delivery instead of six months from the date of the policy was prejudicially erro-

neous.   (*Methvin* v. *Fidelity Mutual Life Ins. Co.,* 129 Cal.
251.)

J. F. Riley, and Crittenden Thornton, for Respondent.

The impeaching evidence was admissible without reference
to its being hearsay. (Code Civ. Proc., sec. 2052; *People* v.
*Nonella,* 99 Cal. 333.)   The burden of proving non-payment
of future premiums was upon the defendant.   (*Kumle*
v. *Grand Lodge A. O. U. W.,* 110 Cal. 204; *Berliner* v. *Travel-
ers' Ins. Co.,* 121 Cal. 451; *Tobin* v. *Western Mutual Aid
Society,* 72 Iowa, 261; *Union Life Ins Co.* v. *Haman,* 54 Neb.
599; *Elmer* v. *Mutual Benefit Life Assn.,* 19 N. Y. Supp. 289,
290; 64 Hun, 639; *Hodsdon* v. *Guardian Life Ins. Co.,* 97
Mass. 144.[1])   The future payments were conditions subse-
quent.   (*New York Life Ins. Co.* v. *Statham,* 93 U. S. 24, 30;
*Thompson* v. *Insurance Co.,* 104 U. S. 252; *McMaster* v. *New
York Life Ins. Co.,* 90 Fed. 40, 44.)

HENSHAW, J.—A rehearing in this case was ordered. In
the Department opinion it was said:—

"The defendant, said insurance company, issued a policy
of insurance upon the life of Edward E. Thomas for the
benefit of his wife, Emily C. Thomas, the plaintiff herein.
Said policy was dated at Milwaukee, Wisconsin, January 25,
1898.   The premium thereon was $90.90, payable semi-annu-
ally, on the twenty-fifth days of January and July each year.
The policy acknowledged the receipt of the first payment as
of the date of the policy, and contained a promise to pay the
beneficiary in case 'of the death of said insured during the
continuance of this policy,' the sum of ten thousand dollars,
in semi-annual payments of five hundred dollars, or, upon
request, it would commute the amount to be paid at the sum
of $7,067.

"The complaint alleged: 'That during the continuance of
said policy, to-wit, on February 7th, 1899, said insured died.'
The answer set out the material parts of the policy and denied
that said insured died during its continuance, and alleged
'that neither the said insured, nor any person on his behalf,
paid said second semi-annual premium,' and that no premium
except the first was ever paid.   The jury returned a verdict

[1] 93 Am. Dec. 73.

for the plaintiff, upon which judgment was entered. Defendant's motion for a new trial was denied, but no appeal was taken from the order denying it. This appeal is taken from the judgment, but was not taken within sixty days, and therefore the sufficiency of the evidence to justify the verdict cannot be considered.

"Upon the trial the plaintiff put in evidence the policy of insurance and proved the death of the insured, and that plaintiff is the beneficiary named therein, and rested. The defendant thereupon moved for a nonsuit, upon the ground that there was no evidence of the payment of any premium except the first, which was shown by the policy itself. The question thus presented is, Upon which party did the burden of proof rest—whether upon the plaintiff to prove the payment of the subsequent premiums, or upon the defendant to prove facts showing that the policy had lapsed and become void?

"That Thomas, the insured, took out a policy in the defendant corporation dated January 25, 1898, that the policy recited the payment of the first semi-annual premium on that day, and that it was in fact paid is conceded. It follows that from the date of the policy until July 25, 1898, at the least, there was a valid and unquestioned insurance upon the life of Edward E. Thomas. Appellant contends, however, that two other semi-annual premiums became due before the death of Thomas, that the life of the policy depended upon their payment, that the payment of the semi-annual premiums were conditions precedent throwing the burden of proving subsequent payments upon the plaintiff. But in this counsel is in error. The policy being a valid and enforceable contract when issued, the future payments were conditions subsequent of which the insurance company might or might not avail itself to defeat a recovery.

"In *Thompson* v. *Insurance Co.*, 104 U. S. 252, it was held that the payment of the annual premium upon a policy of life insurance is a condition subsequent, the non-performance of which may or may not, according to circumstances, work a forfeiture of the policy.

"In *New York Life Ins. Co.* v. *Statham*, 93 U. S. 24, 30, it is said: 'We agree with the court below that the contract is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium, but

that it is an entire contract of assurance for life, subject to discontinuance and forfeiture for non-payment of any of the stipulated premiums. Such is the form of the contract, and such is its character. It has been contended that the payment of each premium is the consideration for insurance during the next following year—as in fire policies. But the position is untenable.'

"In a very recent work, Kerr on Insurance, p. 779, it is said: 'It is incumbent upon an insurer who alleges a non-payment of a premium upon a contract admitted to have been once in force, to show the default whereby the obligation is claimed to have terminated. But if the *fact* of the *making* of a valid and binding contract be in issue, the burden of proving that fact, including the payment of the premium, or an agreement for credit, rests upon the insured.' (See, also, *Tobin* v. *Western Mutual. Aid Society,* 72 Iowa, 261; *Hodsdon* v. *Guardian Life Ins. Co.,* 97 Mass. 144.[1]) In *Kumle* v. *Grand Lodge A. O. U. W.,* 110 Cal. 204, 209, it was expressly held that 'the burden of establishing the failure to pay assessments is upon the defendant,' (citing *Tobin* v. *Western Mutual Aid Society,* 72 Iowa, 261; *Spencer* v. *Citizens' Mutual etc. Ins. Co.,* 142 N. Y. 505; Black on Benefit and Insurance Societies, sec. 454, and cases there cited).

"*Howell* v. *Knickerbocker Life Ins. Co.,* 44 N. Y. 276,[2] cited by appellant, is broadly distinguished from the present. There Howell insured his life for the benefit of his wife 'for one year in the sum of $5,000.' The policy contained the following clause: 'And it is hereby agreed that this policy may be continued in force from time to time until the decease of the said George R. Howell, provided that the said assured shall duly pay to the said company annually on or before the fifteenth day of July in each and every year the sum of $138.' In that case the insurance was for one year, with the privilege of renewal from year to year. There was no contract of insurance beyond the expiration of the year, and hence there could be neither forfeiture nor waiver.

"We think the court did not err in admitting the testimony of plaintiff's witnesses, Mangrum and Hill. Smith, the general agent of the defendant, and a witness in its behalf, had testified in substance that the policy lapsed on July 25,

[1] 93 Am. Dec. 73.    [2] 4 Am. Rep. 675.

1898, that it died on that day; that he would not have accepted the premium after that day unless Thomas produced a certificate of health and paid interest on the premium; that he always urged him to be reinstated; that it would have been nonsense to ask him to pay without medical examination; that the last conversation he had with Thomas on this subject before his death was probably about two or three months after the policy lapsed; that he had no conversation with Thomas regarding his policy and its reinstatement after December 10, 1898. Thomas was found asphyxiated in his room on the morning of February 7, 1899, and the coroner took charge of the body, at which time Mr. Smith, Mr. Mangrum, and Dr. Hill (the coroner) were present. Mr. Mangrum and Dr. Hill were each called by plaintiff in rebuttal, and were asked whether, upon the occasion above stated, Mr. Smith said, referring to E. E. Thomas, the insured: 'Poor fellow, I asked him time after time to pay his premium, and he would promise and then not do it. I kept it going or kept it up, hoping he would do it, poor fellow, he did not. I spoke to him about paying his premium every time I saw him, I spoke to him about it the last time I saw him, only a few days ago.'

''Appellant's objection was overruled, and an exception taken, and is now urged as a ground of reversal. Both witnesses answered in the affirmative.

''The evident purpose of the plaintiff was to impeach defendant's witness Smith. The ground for the impeaching evidence was properly and fully laid. Appellant's only argument upon the question is a quotation from the case of *Crawford* v. *Transatlantic Fire Ins. Co.*, 125 Cal. 609, 612. In that case 'the main question was whether all the acts of said agents, taken together, amounted to an execution of the policy, so that it became obligatory upon the defendant.' This was sought to be shown by the declarations of one of the agents after the delivery of the policy, and when he was not acting for the defendant in any business connected therewith. Such declarations were rightly held to be hearsay. They were offered to prove a fact, and not for the purpose of impeachment.''

The conclusions thus reached are here reaffirmed.

The court adopted the theory and instructed the jury that the policy did not go into effect until the date of its delivery.

This was of course erroneous. (*Methvin* v. *Fidelity Mutual Life Ins. Co.,* 129 Cal. 251.) Not only were the instructions given erroneous in point of law, but they were injurious to the substantial rights of the appellant. By the terms of the policy, and under the law, the premiums were payable upon July 25th and January 25th of each year. The policy was delivered at such a time as to make, under the instructions of the court, the semi-annual premiums payable upon the 17th of August and the 17th of February of each year. Thomas died upon February 7, 1899. There were thus, under the law, properly construing the policy, two premiums due from him to the company,—the one of July 25, 1898, the other of January 25, 1899. Under the instructions of the court, however, there was only one semi-annual premium which had fallen due before Thomas's death, that accruing upon August 17, 1898, because he died before February 17, 1899, the date when, under the court's instructions, the second premium would have fallen due. There was no conversation shown between the deceased, Thomas, and the general agent, Smith, after January 25, 1899, upon which the claim could be sustained that the company had waived the payment of the premium falling due upon that date. The conversations from which the jury could justly draw their finding of a waiver all took place before that date, and were addressed, therefore, only to a waiver of the premium which fell due upon July 25, 1898. If two premiums were due, as in law they were, then the evidence fails to show a waiver of the second. Upon the other hand, since under the instruction of the court but one premium had fallen due at the time of the death of the insured, the jury was relieved from the necessity of finding a waiver as to the second premium, and their attention was directed and limited solely to that question as applied to the premium falling due under the instructions upon August 17th.

In this discussion we have not been considering the sufficiency of the evidence to justify the verdict, for, as has been said, the appeal was not taken in time for that purpose. But the evidence in the record is properly before us for consideration in determining whether errors of law, duly excepted to, were committed by the court, and whether or not such errors, if committed, were prejudicial and injurious. As has been

said, it appears not only that error was committed, but that such error was clearly prejudicial to the appellant.

For the foregoing reasons the judgment appealed from is reversed and the cause remanded.

Shaw, J., Angellotti, J., Van Dyke, J., and Lorigan, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment of reversal upon the ground last stated in the foregoing opinion,—that is, because the instructions therein referred to were erroneous. But I am not prepared to say that in an action upon an ordinary life-insurance policy, such as that here sued on, the plaintiff need not prove the payment of the premiums provided for in the contract, but can throw upon the insurance company the burden of the negative proof of non-payment. This would be in direct conflict with the general principle that a party suing on a contract must show his compliance with it, which was expressly declared applicable to an insurance policy in *Bergson* v. *Builders' Ins. Co.*, 38 Cal. 541, 546. I do not think that *Kumle* v. *Grand Lodge A. O. U. W.*, 110 Cal. 204, which is mainly relied on, was intended to establish, or does declare, that a different rule applies to the contracts contained in ordinary insurance policies; it merely holds that when, in that case, the plaintiff had proved that at a certain time he had the *status* of "good standing" in a beneficial association, such *status* was presumed to continue to exist, unless there was evidence to the contrary. And most of the other cases cited were cases arising out of benevolent or mutual benefit societies. But in the case at bar no such question of "*status*" or "good standing" arises.

BEATTY, C. J., concurring.—I concur in the judgment, but as to the proposition that the burden rests upon the insurer to prove that accruing premiums have not been paid, I think, an examination of the decided cases will show that it rests upon very slender authority, as it certainly is in conflict with a leading principle of the law of evidence. The two cases cited from the United States supreme court reports (*Thompson* v. *Insurance Co.*, 104 U. S. 252, and *New York*

*Life Ins. Co.* v. *Statham,* 93 U. S. 24) involved different questions. In the first case, the court, conceding that the payment of accruing premiums was a condition that might be waived, merely decided, on demurrer, that plaintiff's replication did not show a waiver. In the second, all that was decided was, that the existence of a state of war between the respective countries of insured and insurer does not prevent a forfeiture for non-payment of premiums; but does entitle the insured to recover the equitable value of his policy at the date when payment of accruing premiums is by the war rendered impossible. Of the cases cited in support of the statement quoted from Kerr on Insurance, *Tobin* v. *Western Mutual Aid Society,* 72 Iowa, 261, rests on the mere authority of *Hodsdon* v. *Guardian Life Ins. Co.,* 97 Mass. 144,[1] and that, without any discussion, simply cites *Gray* v. *Gardner,* 17 Mass. 188; *Kingsley* v. *New England Mutual Fire Ins. Co.,* 8 Cush. 393; *Daniels* v. *Hudson River Fire Ins. Co.,* 12 Cush. 426,[2] and *Orrell* v. *Hampden Fire Ins. Co.,* 13 Gray, 431. Turning to these cases, we find in the first that where a party gave his promissory note conditioned to be void if a certain quantity of oil was brought into port between certain dates, the burden was held to be upon him to prove, in defense of an action on the note, that the oil had been brought in. In *Kingsley* v. *New England Mutual Fire Ins. Co.,* 8 Cush. 393, it was held that where a policy of fire insurance exempted the insurer from liability for fire caused by cotton-waste, the insurer sustained the burden of proving that the fire was caused by cotton-waste. In *Orrell* v. *Hampden Fire Ins. Co.,* 13 Gray, 431, the defense in a fire-insurance case was alienation of the property by the insured. *Held,* that the insurer must prove it. No one would doubt the correctness of these decisions, which in every instance placed the burden of proof where it belongs,—i. e. with the party affirming the fact. The decision in *Daniels* v. *Hudson River Fire Ins. Co.,* 12 Cush. 426,[2] does come a little nearer the point. That was a fire-insurance case, in which the defense was misrepresentation of a material fact in the application for insurance,—the fact represented being that there was a force-pump of a certain character on the premises, and the decision that the insurer must prove that the representation was false.

[1] 93 Am. Dec. 73.                    [2] 59 Am. Dec. 192.

Other cases cited by Kerr are suits against mutual benefit societies, like our own case of *Kumle* v. *Grand Lodge A. O. U. W.*, 110 Cal. 204. The contract in these cases is to pay the benefit on condition that the member is in good standing at the time of his death. The good standing evidenced by his certificate of membership can only be forfeited by failure or refusal after notice to pay an assessment duly levied, and the proof of these facts is rightly imposed upon the party affirming them. I have seen no sufficient reason anywhere advanced for holding in this case more than in other cases that the party affirming a fact upon which his right depends is exempted from proving it when put in issue.