[Civ. No. 6222. First Appellate District, Division One.—March 6, 1928.]

MYRTLE ROSANDER, Respondent, v. MARKET STREET RAILWAY COMPANY, Appellant.

Wm. M. Abbott, K. W. Cannon and Walter H. Linforth for Appellant.

R. P. Wisecarver and Redman & Alexander for Respondent.

PARKER, J., *pro tem.*—This is an action for damages in which the verdict of the jury was in favor of plaintiff and against the appellant and its co-defendants. A new trial was denied. The co-defendants of appellant are Golden Gate Materials Co. (a corporation), McDaniel & Barrymore (a copartnership) and F. D. McDaniel and O. C. Barrymore. While all of the defendants have appealed from the judgment entered, in view of the fact that separate appeals were taken and presented separately, we deem it better that the appeals should be separately decided. We have before us, therefore, at this time for consideration the appeal of defendant Market Street Railway Company.

A brief statement of the facts will suffice. The entire controversy arises out of a collision between a street-car and

a gravel truck. It is conceded that plaintiff was wholly blameless and no suggestion of contributory negligence enters into the case. It was and is the claim of plaintiff that both the railway company and the owners of the truck were negligent and that the accident was the result of such joint negligence. The railway company denies negligence, and seeks to fasten all blame upon the driver of the truck, while the defendants liable for the control of the truck lay the entire blame upon the railway company with no degree of negligence attributable to themselves. For all general purposes it may be said that the issue of negligence was between the defendants. It might be also noted that on this appeal no question is raised as to the injuries sustained by plaintiff, nor does the appellant here urge any point on the amount of damages allowed by the verdict, namely, $35,000. Appellant here concedes the sufficiency of the evidence to sustain the verdict, and admits that in the rulings of the trial court on the reception and rejection of evidence no error was committed.

While, as noted, appellant concedes the sufficiency of the evidence, this concession, nevertheless, is predicated solely upon the admission that such sufficiency exists by reason of a sharp conflict. In other words, appellant does not yield in its stand that it was free from negligence and admit its default as a matter of fact, but, rather, yielding to the rule of law and practice of appellate courts, concedes that there is sufficient in the record to preclude our holding as a matter of law that the verdict is unsupported. The appellant contends that by reason of a sharp conflict in the testimony its rights were prejudiced and justice withheld from it by reason of certain instructions of the court.

The negligence of which appellant here, Railway Company, was specifically charged is that the said company, by and through its agents, motorman and conductor, operated a street-car in the city and county of San Francisco at and approaching an intersection at a rate of speed greater than 12 miles per hour and in violation of a city ordinance. The controversy therefore narrowed down to that of speed of the street-car at the time and place in question, referring of course as far as appellant is concerned. The testimony of witnesses for the plaintiff was that the street-car was being operated at a speed of 35 miles per hour. The witnesses for

defendant truck company testified to the same effect. It might be noted that one witness placed the speed as high as 50 miles per hour. There was testimony also to the effect that the street-car was behind in its schedule and trying to gain time, and that it was not stopping at usual places to take on passengers and ignoring all signals of expectant passengers awaiting the usual service. To rebut this the defendant street-car company offered testimony of many witnesses. But two of these witnesses, of a total of six, attempted to give the speed of the street-car in terms of miles per hour. The testimony of these witnesses of appellant not reducing the speed to miles per hour was in such phrases as follow, namely: ''Car going slowly''; ''nothing unusual about the speed''; ''very slowly,'' ''going rather slow,'' ''slowly crawling.'' The witnesses so testifying were passengers on the car, and in most instances were people who frequently, if not daily, traveled over the route in question and at the same time of day. Witnesses using the phrases quoted disclaimed any ability to approximate the speed in miles per hour.

In this state of the case the court instructed the jury as follows: ''You are instructed that in considering the weight to be given to testimony of witnesses as to the speed of vehicles involved in the collision, such expressions as 'slow,' 'very slow,' 'fast,' 'very fast,' 'speeding,' 'crawling,' and the like are merely relative, and their meaning and effect must depend upon the unknown factor of the witnesses' personal views regarding standards of speed, and such expressions standing alone are entirely too uncertain to serve as a basis for any finding that the speed of the vehicle was in excess of or within the rate which would be dictated by the demands of ordinary prudence.'' This instruction was given at the request of the co-defendant of the appellant and was not offered by plaintiff.

Appellant vigorously assails this instruction, claiming that it took from the jury the entire case of appellant and negatived and rendered impotent all of its evidence on the vital question in the case. Appellant further urges that the giving of the instruction was violative of the constitutional provision forbidding the courts charging juries with respect to matters of fact. To catalog all of the special criticisms directed to this instruction, and minutely detail

each claim of error predicated thereon, would involve a needless task in that the purpose thereof is to indicate the opinion of this court rather than the views of appellant.

At the outset we may state that we do not give unqualified approval to this form of instruction. Ordinarily it is well to let the jury weigh all of the evidence unhampered by any suggestions as to the weight to be given any portion thereof. Instructions such as this usually serve the purpose of prolonging litigation and offer fertile ground of argument. The instruction as given adopts the language of the supreme court in the case of *Diamond* v. *Weyerhaeuser*, 178 Cal., at page 543 [174 Pac. 39]. In that case the trial court directed a verdict against the plaintiff. The negligence attributed to defendant consisted in part of operating an automobile at a rate of speed in excess of 20 miles per hour, and the existence of any substantial evidence in support of this charge would have rendered erroneous the action of the trial court. The plaintiff testified that the machine was coming "very fast"; another witness that its speed was decreasing before it reached plaintiff but that it was still going "at a good speed"; and the one other witness testified that it looked to him as if the automobile "was going pretty fast." The court, in affirming the judgment of the lower court, used this language. "These statements are entirely too uncertain to serve as a basis for a finding that the speed was over twenty miles per hour, or that it was in excess of the maximum rate which would be dictated by the demands of ordinary prudence. Such expressions as 'very fast,' 'pretty fast' and the like are merely relative, and their meaning and effect must depend upon the unknown factor of the witness's personal views regarding standards of speed."

In the case of *Lindgren* v. *Omaha St. R. Co.*, 73 Neb. 628 [103 N. W. 307], it was held that the testimony of a witness that a car was moving "rapidly and at a high rate of speed" was properly excluded on account of its indefinitness and uncertainty.

In *Keiser* v. *Lehigh Valley R. Co.*, 212 Pa. St. 409 [108 Am. St. Rep. 872, 61 Atl. 903], the court says: "One witness testifies that the train was running very fast; but inasmuch as he did not say how fast, nor fix any standard

by which the speed could be ascertained, his testimony is without value in this respect."

In *Watson* v. *Erie R. Co.*, 10 Ohio Dec. 454, speaking of testimony that a train was running "fast," the court said: "One man considers a thing rapid, another man considers it slow. It furnished no criterion or data by which the judgment of the jury could be applied and the rate of speed determined."

In *Foley* v. *Boston R. Co.*, 193 Mass. 332 [7 L. R. A. (N. S.) 1076, 79 N. E. 765], we find the following apt language: "Mere expletive or declamatory words or phrases as descriptive of speed or acts, unaccompanied by any evidence capable of conveying to the ordinary mind some definite conception of a specific physical fact, and depending generally upon the degree of nervous emotion, exuberance of diction and volatility of imagination of the witness, and not upon his capacity to reproduce by language a true picture of a past event, are of slight, if indeed they are of any, assistance in determining the real fact."

We need not cite further authority. Sufficient appears to indicate that the language of our own court in *Diamond* v. *Weyerhaeuser, supra,* was not the expression of a strange doctrine, nor was it an attempt to set up any new rule in this jurisdiction. Every-day experience demonstrates the lack of definite meaning in such general phrases as are under discussion. One person going at 30 miles an hour would describe his speed as a snail's pace "crawling along"; another would describe the same speed as "lightning fast." From the mere descriptive words any clear conception of the speed would be unobtainable, nor would such terms even serve as the basis for intelligent speculation.

The court in the instruction attacked simply said that the terms used, "standing alone," were subject to the weakness and uncertainty stated. It would hardly be doubted that if a witness gave his statement that a car was going "very fast" and stopped there without further explanation or comment, and without cross-examination of any sort, and that was the entire evidence on the question of speed, no finding could be based thereon, in view of the authorities cited. Appellant replies to this by insisting that the testimony of the witnesses called by it did not stop at this, but went further and showed by other facts what the speed was. If this is

conceded, then the query presents itself as to just how the instruction could have harmed appellant's case. Its reply to this anticipated question is that the jury would be misled thereby, and that the jury would not single out or perhaps not hear read the words "standing alone," and would ignore all of the testimony of appellant's witnesses, believing that if the terms used by them were of such uncertainty, and were practically the words used by appellant's witnesses, then the court intended to advise the jury that the testimony of these witnesses was not entitled to weight.

The commendable anxiety of all counsel to prevent the jury from ever being misled invokes just praise. But we cannot reason that a jury might be misled on the theory that possibly a juror did not hear a certain part of the instruction when read. Without going further into the question of what the jury might have understood by the instruction it will be enough to quote from the language of the supreme court in the case of *Douglas* v. *Southern Pacific Co.*, 203 Cal. 390 [264 Pac. 237], decided February 13, 1928: "Jurors are presumed to be persons of common intelligence and capable of comprehending the ordinary use of language as applied to the particular proposition under consideration and in reference to which it is employed. We will not assume that they may not have understood the charge as we understand it."

Again, appellant argues that nonexpert witnesses are competent to form an opinion as to the speed of a car or automobile and are permitted to give that opinion in any case involving that issue. Abundant authority is cited in support of this contention, and we may concede the point without reviewing the cases. Conceding that a nonexpert witness may express his opinion on the question of speed we still must require that he so express that opinion in language sufficiently intelligible and certain to disclose what his idea is. The reasoning behind this class of opinion testimony seems to be one of necessity. Courts adopt a liberal rule in this respect because the exigencies of the case compel. In almost every case some comment is made upon the weakness of evidence of this character; and even where accepted apparently without reserve, nevertheless some explanation is always forthcoming. Testimony of this character is accepted as highly speculative; but a majority of the courts, con-

ceding this, hold that the inherent weakness is a matter of commonplace knowledge and goes to the weight rather than the admissibility. Thus premised, it is easy to conclude that building one speculation upon another is not within the spirit of the rule nor conducive to the ends sought. Courts have gone far enough in subjecting life, liberty, and property to mere speculative opinions, and we are not disposed to extend the rule so far that the courts or juries will speculate upon what a speculative opinion might be. If an intelligent witness or any witness is prepared to state his conclusions on speed, he can readily make comparisons or estimates or give reasons for his opinion, and thus give facts illustrative of the issues and furnish same basis for examination and comparison; and further he can subject his testimony to definite tests and be forced to stand definite enough to subject himself to the law's demands relative to the crime of perjury. Almost the entire case of appellant hangs on this one instruction, and the oral argument was directed exclusively to it. Therefore before leaving this subject we will go further.

Much respectable authority is presented which would compel a holding that the instruction was error; but, as generally found, each case rests more or less upon its particular facts. It might well be that in a case where motion or lack of motion in itself was material to the inquiry general phrases would throw light on the question. But where there is a definite rate of speed involved, as in cases where the fact to be determined is whether the rate of speed did or did not exceed 12 miles per hour, we think the language of *Diamond* v. *Weyerhaeuser, supra,* covers the principle. Summarizing the evidence in this case in a way that the same is not disputed, the record discloses: Plaintiff is leaving her doorway and hears a crash. Looking up she sees the collision between the truck and the street-car, and in the instant sees the truck catapulting towards her. She attempts retreat but the truck overtakes her and runs her down at her own door. She is injured to an extent almost equal to a living death. The truck in question is a five-ton truck loaded with sand, the total weight of truck and load being around 23,000 pounds. With reference to the street-car, it is admitted by appellant that on the morning in question the car was behind its schedule time and was endeavoring to

make up this time. Appellant explains that the method employed in making up the lost time was not an increase of speed but the saving of time by failing to stop to take on passengers at the intersections. To overcome any charge or inference of negligence in not sounding a warning, appellant proved almost to demonstration that, while the car was traveling along, the motorman was violently clanging the bell even while some 200 · feet from the intersecting streets where the accident occurred and likewise to the point of collision. Thus we have a street-car going downhill, passing up passenger stops, violently clanging a bell for the right of way, and at an intersection striking a loaded truck of a weight of some 23,000 pounds and knocking the said truck off the street and on to the property line. With these facts conceded, it is easy to believe the disputed testimony of eye-witnesses that the car was going at 35 miles an hour and was not crawling along.

While we go to the extent of withholding express approval of the given instruction, we cannot condemn it to the extent of requiring a retrial of the case by reason thereof. As indicated, the law of the instruction is supported by our own supreme court and by much other authority. And while much may be said on the other side, we do not feel that we should go into a hypercritical analysis tested by philosophical standards in an attempt to find some reason or ground of argument to demonstrate that an injustice resulted to appellant.

In concluding this subject we call attention again that it is a dangerous practice, and one not to be followed, to take excerpts from opinions of the courts of last resort and indiscriminately change them into instructions to juries. The reasons are too obvious to require further comment.

█ Appellant next objects to an instruction given by the court of its own motion as follows: "The opinions of experts are not conclusive. Their opinions are not to be substituted for the common sense and judgment of the jury. The purpose of the introductions of such evidence is to supplement the general knowledge and experience of the jury in relation to the matters before the jury, and thereby to aid the jury in the exercise of its own judgment to the end that a more just and accurate conclusion may be drawn from the evidence."

After carefully noting the objections of appellant and the authorities offered in support thereof, we do not think that any sufficient reason is shown which justifies interference with the judgment. The scope of expert testimony and the effect of instructions thereon are covered in the following cases: *McLean* v. *Crow,* 88 Cal. 644 [26 Pac. 596]; *Ehlers* v. *Wannack Bros.,* 118 Cal. 310 [50 Pac. 433]; *Haight* v. *Vallet,* 89 Cal. 245 [23 Am. St. Rep. 465, 26 Pac. 897]; *Hirshfield* v. *Dana,* 193 Cal. 142 [223 Pac. 451]. The first two cases approve practically the identical instruction, and the last cases announce the general rule. This point does not need further inquiry for the reason that it is unimportant in the present case. There was only one expert, and his testimony was concerning the operation of a truck of similar character and similar in load to the truck involved in the accident. After he had testified fully, the court and jurors and counsel adjourned to the scene of the accident and a demonstration was had. Surely the jury no longer were greatly interested in what the expert might have thought or what his opinion was after the experiment was made and the expert's opinion tested.

Appellant brings to us another instruction given by the court at the request of its co-defendants, as follows: "You are instructed that you cannot hold Ray Palamountain (the driver of the truck) to the use of that skill which might have been used by an expert in the operation of the truck. In other words, there is no evidence of negligence to fail to do what an expert truck driver may or could have done or to do that which an expert truck driver would not have done under similar circumstances. All Palamountain was required to do was to exercise ordinary skill and use that amount of care which an ordinary prudent person would have used under similar circumstances."

Without going into the the claims of appellant regarding the error of giving such an instruction, we fail to see where appellant is affected thereby. If the jury had absolved the truck driver from all blame, or by the verdict absolved the co-defendants from any liability, appellant might be heard to complain. The instruction in nowise bore upon the question of appellant's negligence, and an erroneous instruction as to the measure of care required on the part of the truck driver could not damage appellant. Irrespective of this

instruction the jury found the truck driver negligent as well as appellant; and if the instruction had been closely followed by them the verdict shows that the jury found that the truck driver had failed to use ordinary care or that amount of care which an ordinarily prudent person would have used under the circumstances.

Appellant cites no authority in his attack upon this instruction, and fails to point out even by way of argument wherein the error claimed could have damaged it. However, we may conceive of a theory being advanced to the effect that the jury might have inferred that someone must have been negligent, and if it was not the truck driver it must have been the appellant. Building this theory for ourselves we can as readily destroy it. First, the jury were plainly told that no presumption of negligence arose from the fact that an accident had happened. Second, the jury did not absolve the truck driver but held him jointly negligent.

We do not wish to be understood as approving this instruction. We deem it inapt and confusing. The same thought and better law would be expressed by the usual instruction on ordinary care. It is confusing because the term "expert" has no settled meaning. It may be said that any man possessing ordinary skill in a certain line is expert therein; and it is difficult to state at once just what an expert truck driver could or would do that a truck driver possessing ordinary skill could or would not do, unless, perhaps, we go into questions of trick or stunt driving, which questions are not met with in the usual commerce of the day.

In the appeal from the judgment is included the trial court's order denying appellant's motion for a new trial. We find no error in this order.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1928.

All the Justices present concurred.