[Civ. No. 6951. First Appellate District, Division Two.—February 17, 1930.]

BETTY GACKSTETTER, a Minor, etc., Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Appellants.

Wm. A. Abbott, K. W. Cannon and Walter H. Linforth for Appellants.

Vincent W. Hallinan and James J. Roach for Respondent.

STURTEVANT, J.—The plaintiff, a minor girl of the age of about four years, was injured by being struck by one of the cars operated by the Market Street Railway Company. By her guardian *ad litem* she commenced this action to obtain a judgment for injuries sustained. She named the company, L. M. McClelland, the motorman, and W. J. Housel, the conductor, as defendants. The conductor's motion for a nonsuit was granted. The jury returned a verdict in favor of the plaintiff and from a judgment entered thereon the other defendants have appealed.

The accident occurred between Broderick and Divisadero on Hayes Street in San Francisco on the twenty-fourth day of June, 1925, at about half-past 3 P. M. Hayes Street runs from east to west. Between Broderick and Divisadero there is a slope toward the east and the street has a grade

of 3.6 per cent. The defendant maintains a double track on Hayes Street. The collision occurred in about the middle of the block and the plaintiff was struck by a car traveling from west to east. At the time of the collision a building was being constructed on the south side of Hayes Street. In front of that building was a pile of rock or sand. The point of the collision was directly north of that pile.

Judging from the instructions requested by the plaintiff and by the questions propounded to the witnesses, it was the theory of the plaintiff that at the time of the accident the defendants' car was being driven at a speed in excess of the speed limited by an ordinance of the city and county of San Francisco, to wit, at a speed in excess of fifteen miles per hour; that in any event the car was being propelled at an excessive speed under the particular circumstances introduced in evidence; and that under the doctrine of the last clear chance the defendants' car could have been and should have been stopped before the collision. On the other hand, it was the theory of the defense that at the time and place of the accident its car was being propelled at a speed not to exceed seven or eight miles per hour and that when the motorman saw the plaintiff she was on the sandpile and later he saw her move northerly toward the track and when he saw her so move he slugged the car according to the most approved manner and stopped within fifteen or twenty feet.

The only evidence in the record to the effect that defendants' car was being propelled faster than seven or eight miles per hour was given by Mr. McDonnell, a witness called by the plaintiff. Mr. McDonnell was a police officer, going to work, and had boarded the car in the Western Addition. He took a seat in the back end of the car and was reading his paper and paid no attention to the movements of the car until he heard a scream; then he laid his paper down. After he heard the scream he testified that the car stopped very quickly. Regarding the speed of the car, he testified that from the time the car left Broderick Street until the little girl was struck "it was going at a *moderate* rate of speed. I would call a *moderate* rate of speed between twenty and twenty-five miles an hour. *To the best of my knowledge* it was going about that speed at the time I mentioned." Looking at all of that testimony

it is perfectly clear that the officer had, in effect, testified that he had no *knowledge* on the subject of the speed of the car and therefore his testimony on that subject does not conclude a court of justice. (22 C. J. 726; *Newell-Murdoch Realty Co.* v. *Wickham*, 183 Cal. 39, 43 [190 Pac. 359, 361].) In that case the court said: "These statements of the witness, which are but statements, of conclusions and probabilities, following his emphatic statement that the subject was not touched upon, cannot be considered as a substantial contradiction of the positive testimony of the defendants that nothing of the kind was said."

█ As to the second theory advanced by the plaintiff, the record contains no combination of facts which brings it into application. When the motorman saw the children at play on the pile of sand, he did not attempt to run by the pile of sand at full speed, to wit, at fifteen miles per hour. He did not run by it at all. When the car stopped after the accident had happened, the nose of the car was opposite the center of the pile of sand. The little girl's body rested on the rail twelve feet back from the front of the fender when the latter is in a down position.

Under the theory of the doctrine of the last clear chance the plaintiff makes two different claims. One is based on the testimony of the defendant motorman. The other is based on the testimony adduced from witnesses called by the plaintiff. We will take up each claim in the order stated. The defendant McClelland was the motorman in charge of the car. He testified that as he was proceeding easterly on Hayes Street his car made a stop at Broderick and took on two passengers. He then proceeded at first slowly and then increased his speed to seven or eight miles an hour. After he had left Broderick and when his car was a length and a half back, he saw the plaintiff on the west side of the sand-pile a foot or perhaps two feet from the south curb. He kept his eye on her. Later she started to run across his path in the direction of the north curb. As she did so she was facing him, and therefore running somewhat toward him. At that time his car was twenty feet back from the plaintiff. The instant he saw her start to run he immediately tried to stop his car. He slugged it and stopped the car, so he testified, within fifteen or twenty feet after he saw her start to move. When the fen-

der is down the distance from the edge of the fender to the place where the motorman stands is about eight feet. From the edge of the fender to the plaintiff was therefore twelve feet when the motorman saw her move. While he was stopping the car he was giving his attention primarily to that effort but within the scope of his vision he saw the plaintiff to his right, probably three feet from the car. On cross-examination he testified that he could, under the same conditions, at the same place, by using the same method, stop the car in twelve or fifteen feet and by turning on the air that it would take twenty feet. On direct examination and on cross-examination the witness repeatedly stated that from the moment he saw the plaintiff start to move he did everything in his power to stop the car. The plaintiff called two motormen now employed by the municipal road but who were formerly employed by the defendant road. G. R. Ensign testified that at the time and place of the accident by slugging it the car, traveling seven to eight miles per hour, could be stopped in ten or twelve feet. John Sorgenfrey, similarly qualified, testified that it could be stopped in ten feet. It may be granted that the last two witnesses were more skilled than McClelland. But no witness testified to any fact, or set of facts, tending to prove that after McClelland discovered the peril of the plaintiff he did not exercise ordinary care to avoid injuring her. If he did exercise ordinary care, he was not liable. (19 Cal. Jur. 651.) The fact that, notwithstanding the exercise of such care on his part, the plaintiff was injured, is not the test. (*Green* v. *Los Angeles etc. Ry. Co.*, 143 Cal. 31, 48 [101 Am. St. Rep. 68, 76 Pac. 719] ; *Lambert* v. *Southern Pac. R. R. Co.*, 146 Cal. 231 [79 Pac. 873] ; *Kramm* v. *Stockton Electric R. R. Co.*, 10 Cal. App. 271, 278 [101 Pac. 914].)

█ As based on the testimony of her own witnesses the case of the plaintiff rested partly on the testimony of Mrs. Blass. She resides on the same side of the street in the same block and a few doors east of the place where the accident occurred. She testified that at the time of the accident she was on the sidewalk near the curb talking to some persons in an automobile that was parked alongside of the curb. She stood in such a position that she was looking toward the west. She saw the plaintiff leave the sidewalk on the

north side and run toward the south side. At the same time she saw the car leaving Broderick Street coming east. The left corner of the bumper of the car struck the child and the child was thrown through the air to the right over to and upon the rock pile and rolled down. from the rock pile underneath the car. She further testified that the car was moving very quickly, but she did not testify as to where the car was when the motorman saw the peril of the little girl nor did she testify that the motorman omitted, as soon as he discovered plaintiff's peril, to use all possible care to avoid injuring her.

When Mr. McDonnell took the stand he gave the testimony stated above. That testimony we have discussed. He further testified that after the collision he asked the motorman where the little girl came from and that the motorman said she ran across the street. "The motorman said that she ran from the *north* side, I *believe*. He pointed to the north side. He didn't mention the north side but he pointed to it. . . . Well, we were standing at the front end of the car and he said, 'She ran across in that direction in front of my car.' " On cross-examination, in reply to questions propounded by counsel for defendants, the witness stated that about two weeks after the accident he had a talk with Mr. Lewin, an agent of the defendants, regarding the facts of the accident. The conversation was held at Sixth and Market Streets. "He asked me about the speed of the car and I told him the car was going at a *moderate* rate of speed at the time the accident happened. That was a fact, too. Q. Now then, didn't you at that time tell him that in your opinion the motorman made a fine stop and was not at fault? Mr. Hallinan: We object to that as not binding on the plaintiff. Mr. Linforth: I am laying a foundation to impeach the witness. The Court: Sustained." In their briefs the defendants vehemently press that ruling as a prejudicial error. Under the peculiar facts of this case it was. If the question had been allowed and the witness had answered that he did make that statement to Mr. Lewin, necessarily some of the previous answers given by the witness must have been withdrawn. The statement that the motorman was not at fault conflicts squarely with the facts which the witness knew at the time of the accident, or of which he claimed to have been informed, or which his testi-

mony suggested as being true. If in fact the car was traveling twenty or twenty-five miles per hour that was not *moderate,* but criminally immoderate. Nothing to the contrary appearing, the witness knew the motorman's view was unobstructed and that if the latter proceeded at all while an infant four years of age was crossing his path he was not exercising ordinary care or any care. In short, the facts as related or suggested by the witness were directly contrary to the statement intimated in the question to which an objection was sustained. As the plaintiff had not made a *prima facie* case on any other theory than the one last discussed, the jury must have rested its verdict thereon. It is patent, therefore, that the error mentioned was prejudicial and that there has been a miscarriage of justice.

The judgment is reversed.

Nourse, Acting P. J., and Dooling, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 19, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 17, 1930.

All the Justices present concurred.