[Civ. No. 8420. First Appellate District, Division One.—March 13, 1933.]

BETTY GACKSTETTER, a Minor, etc., Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Appellants.

318

William M. Abbott, Walter H. Linforth and William M. Cannon for Appellants.

Vincent W. Hallinan and C. K. Bonestell for Respondent.

THE COURT.—The plaintiff, a minor, was injured by a car operated by defendant Market Street Railway Company. She was between three and four years of age at the time of the accident. The action is against the company and its employee, the motorman who was operating the car. A jury returned a verdict for the plaintiff against both defendants. A motion for a new trial having been made and denied an appeal was taken from the judgment.

This was the second trial of the case. A judgment entered against the defendants on a previous trial was reversed (*Gackstetter* v. *Market Street Ry. Co.*, 104 Cal. App. 89 [285 Pac. 409]). The date of the accident was June 24, 1925, at about 3:30 P. M. It occurred on Hayes Street between Broderick and Divisadero Streets in San Francisco. Between the two streets last mentioned Hayes Street slopes to the east, the grade being 3.6 per cent. Defendant company maintained a double track railway thereon, and the car which struck plaintiff was descending the grade. The motorman testified that from Broderick Street to the place of the accident the car was traveling between 7 and 8 miles

an hour. He first testified that at that speed the car could be stopped within 10 or 15 feet. Later he stated that under the conditions prevailing at the time a stop could have been made within 10 or 12 feet; also that the brakes were in good condition. As he approached he saw the plaintiff and another child standing about 8 feet from the south rail of the track and he thereupon reversed the motors and stopped the car, but not before striking her. The distance from the point where the motorman first saw the child's movement toward the track to the point of collision is not clear from the testimony. It appears that a map was referred to at the time, and places and distances marked thereon by the witnesses, but this map was not brought up on appeal. It can be gathered, however, from the arguments of counsel to the jury that the car was then about 40 feet away. The testimony is conflicting as to the first position of the child as the car approached: witnesses for the plaintiff testified that she was on the sidewalk on the north side of the street and started to run to the south side. As she passed over the tracks the fender of the car struck her, throwing her to the right of the track upon a pile of rock or sand alongside, from which she rolled under the car, which was then slowing up. According to one of these witnesses, when the car stopped the child's leg was between the two right front wheels. All the other witnesses, however, who observed her position testified that her leg was beneath the brake shoe in front of the right front wheel.

The testimony of the witnesses to the accident cannot be reconciled; but, contrary to defendant's contention, we cannot fairly say that either version was inherently improbable. The matter was one for the jury, and the evidence must, of course, be reviewed most favorably to the plaintiff (*People* v. *Woo,* 181 Cal. 315 [184 Pac. 389]; *Packer* v. *Wagner,* 109 Cal. App. 26 [292 Pac. 523]).

The witness Blass testified that the car was "going quickly", but that she could not judge the speed. Another witness, police officer McDonnell, who testified to the speed, was the witness mentioned in the opinion on the former appeal. His testimony will be hereafter considered.

The court instructed that the plaintiff was too young to be chargeable with negligence under the circumstances shown. The submission to the jury of the question was dis-

cretionary, and we cannot say that the evidence was such that the instruction constituted an abuse of discretion (45 Cor. Jur., Negligence, sec. 553, p. 1001; *Mayne* v. *San Diego Elec. Ry. Co.*, 179 Cal. 173 [175 Pac. 690]; *Wallace* v. *Great Western Power Co.*, 204 Cal. 15 [266 Pac. 281]).

In principle, whether the motorman, after seeing plaintiff, apprehended her dangerous position, and used ordinary care thereafter to avoid injuring her, were questions of fact (*Darling* v. *Pacific Elec. Ry. Co.*, 197 Cal. 702 [242 Pac. 703]; *Chappel* v. *San Diego etc. Ry. Co.*, 201 Cal. 560 [258 Pac. 73]). While the evidence on the question of responsibility was close, nevertheless, assuming that witnesses other than McDonnell were correct in their estimates of speed—which varied from 7 to 10 miles an hour—there was, as stated, a conflict as to the circumstances of the accident, and concerning the distance between the position of the car when the child was first seen by the motorman and the place of collision, making the question of negligence one for the jury. Nor, in view of the evidence, which tended to prove facts materially different from those stated in the opinion on the previous appeal, did that decision establish as a matter of law that plaintiff could not recover.

Defendants complain of a number of instructions given by the court and its refusal of others, together with rulings made during the course of the trial.

As to the instructions other than the one to which we have referred, the court charged that the presence of a small child in the street or near the curbing, who is seen by the driver of the vehicle should be a warning to the driver, requiring the exercise of ordinary care for the safety of the child. The fact that the child was near the track when observed by the motorman required him to proceed with caution and to use ordinary care for its safety (60 Cor. Jur., Street Railroads, sec. 351, pp. 471, 472; 45 Cor. Jur., Negligence, sec. 78, p. 702; *Lampton* v. *Davis etc. Bread Co.*, 48 Cal. App. 116 [191 Pac. 710]; *Parra* v. *Cleaver*, 110 Cal. App. 168 [294 Pac. 6]). No higher degree of care was imposed upon the motorman by the instruction complained of.

Another instruction charged that when the driver of a vehicle on a public highway is approaching a child upon the same and sees it in a place of danger, or in such a

position that he may reasonably apprehend that if come upon without warning it might through fright or bewilderment place itself in a position of danger, it is his duty to keep the vehicle under such control as is reasonably necessary to avoid a collision. Defendants claim that there was no evidence that the child when first seen was in a place of danger, or that such was the case at any time until by her sudden change of position it was impossible to avoid injuring her. The testimony that the child came from the north rather than the south side of the street tended to contradict the testimony of the motorman as to her position when she first came under his observation. He testified in substance that his view was unobstructed and that he was watchful in the operation of the car. Consequently, if the child started to cross from the north it is reasonably probable that she was seen by the motorman. As held in *Hoy* v. *Tornich,* 199 Cal. 545 [260 Pac. 565], and *Darling* v. *Pacific Elec. R. Co., supra,* where the operator of a car testifies that he was looking ahead on an unobstructed thoroughfare a jury is warranted in disbelieving his testimony that he did not see the child thereon. So here, in view of the testimony, the jury might have believed that the child came from the north rather than the south, and as she approached must have been seen by the motorman. He admitted that he saw her when the car was a certain distance away; and the jury was not bound by his testimony that she was then on the south side of the track. We think the instruction was not improper.

■ Defendants complain of two other instructions, which stated in substance that if the jury found that the defendants operated the car in a negligent manner, and such negligence proximately contributed to any injury suffered by the plaintiff, then their verdict should be for the latter. It is urged that this instruction erroneously omitted any reference to the plaintiff's contributory negligence.

As stated, it does not appear that the court abused its discretion in instructing the jury that plaintiff was too young to be chargeable with negligence; consequently the instructions were not improper.

■ The same is true of the court's refusal to instruct that if they found the accident was caused solely and entirely by the fault of plaintiff the jury must find for de-

fendants. The word "fault" in the instruction was the equivalent of negligence (*Marston* v. *Pickwick Stages*, 78 Cal. App. 526 [248 Pac. 930]), and was manifestly so intended. In view of the conclusion that the child was not chargeable with negligence the same was properly refused. However, the jury was instructed that if the accident was caused solely by plaintiff's acts, and that defendants used ordinary care to avoid injuring her, she could not recover.

■ The court refused an instruction that the motorman had the right to expect, in the absence of warning or knowledge to the contrary, that plaintiff would not suddenly run across the street or into the car, if the jury so found. The jury, however, was instructed that if they found that the motorman had no reason to believe that the plaintiff would suddenly run upon or in such close proximity to the track until too late to avoid injury their verdict must be for the defendants. This instruction was in substance the same as that offered, and the refusal of the latter was not prejudicial.

■ Plaintiff appeared by her guardian *ad litem,* who verified the complaint. It was alleged therein that she was injured while crossing the street from the south side. Later an amendment of the complaint was filed alleging that she crossed from the north. Defendants offered the original complaint in evidence and sought to read it to the jury for the purpose of proving an admission by the plaintiff. The court ruled against its admissibility, and this is assigned as error.

It appears to be well settled that admissions by a guardian *ad litem* are incompetent to affect the interests of the person represented (22 Cor. Jur., Evidence, sec. 408, p. 353; *Kidwell* v. *Ketler,* 146 Cal. 12 [79 Pac. 514]).

■ The witness McDonnell, who was a passenger on the car, testified that he heard the bell sound, a scream and that the car was suddenly stopped. He further stated in response to a question as to the speed of the car "I should judge about 20 or 25 miles an hour." On cross-examination he was asked upon what he based his estimate. He replied, " . . . Judging from the speed of the car I judged it was going at that speed." He admitted that he was reading a newspaper at the time, and had little opportunity to observe the speed before he heard the scream, but that "judging

from the speed always traveled at that point at that time" his conclusion was as stated. He further stated that he had no ground therefor "except when I heard the first scream I know the car was going pretty fast". As we said with respect to the testimony of this witness on the former appeal, "it is clear that the officer in effect testified that he had no knowledge on the subject of the speed of the car and, therefore, his testimony on that subject does not conclude a court of justice." As was held in *Diamond* v. *Weyerhaeuser*, 178 Cal. 541 [174 Pac. 38], expressions by a witness that a vehicle is "going pretty fast", "very fast" and the like are merely relative, and entirely too uncertain to serve as the basis for a finding as to speed. (See, also, *Rosander* v. *Market Street Ry. Co.*, 89 Cal. App. 710 [265 Pac. 536].)

This rule also applies to the testimony of the witness Blass on the same question.

Defendants moved to strike McDonnell's conclusion as to the speed of the car, and the denial of the motion is assigned as error. We are satisfied that the motion should have been granted.

In this connection, and over defendants' objection that there was no evidence justifying its admission, an ordinance of the municipality, prohibiting the operation of cars in the block where the accident happened at a speed greater than 15 miles an hour, was admitted in evidence. The court also instructed that if the jury found that the ordinance was violated by defendants they were negligent as a matter of law.

The only testimony that the speed of the car exceeded this limit was that of McDonnell, which, as stated, was too uncertain to serve as the basis of a finding in that respect. It has been frequently held that an abstract instruction, to justify which there is no evidence, is erroneous, and if it is calculated to mislead the jury, affords ground for reversal (*Estate of Calkins*, 112 Cal. 296 [44 Pac. 577]; *Jones* v. *Goldtree Bros. Co.*, 142 Cal. 383 [77 Pac. 939]; *Thomas* v. *Northwestern Life Ins. Co.*, 142 Cal. 79 [75 Pac. 665]; *Wallis* v. *Southern Pac. Co.*, 184 Cal. 662 [195 Pac. 408, 15 A. L. R. 117]; *Barrett* v. *Southern Pac. Co.*, 207 Cal. 154 [277 Pac. 481]).

It is further claimed that plaintiff's counsel was guilty of misconduct which prevented defendants from having a fair trial.

In this connection various acts are relied upon. During the examination of the jurors as to their qualifications plaintiff's attorney stated that the names of the brother of one of the attorneys for the defendants, and the mother and sister of another, appeared on the jury list, and questions were asked over objection as to whether the jurors present knew these persons or had served with them as jurors in the trial of any case. These questions were answered in the negative. It is claimed that the purpose and effect of the questions was to prejudice the minds of the jurors by creating the impression that relatives of these attorneys were serving on the panel assigned to try the case.

While the trial was in progress there appeared in two San Francisco daily newspapers articles stating matters connected with the case, including the business of plaintiff's guardian *ad litem* and the entry of a previous judgment and its reversal. The amount of the previous verdict was stated as $15,000, when in fact it was for $5,000. It appeared from testimony taken at the trial that the statements made in the articles were communicated by a brother of plaintiff's attorney who was employed in the latter's office. While the fact that the articles were caused to be published during the trial indicates an intention to influence the result, it was not shown that any member of the jury read the articles.

On the second day of the trial and while the plaintiff's case was being presented her attorney inquired if defendant McClelland, who was the motorman, was then in court. Following the inquiry the attorney went to the door leading to the courtroom and called for this defendant. Later, a demand was made on defendant's attorney to produce him, and an attempt was made to examine one of the attorneys as to his whereabouts. There was nothing to indicate that the railway company was attempting to conceal its co-defendant, who had already been examined as a witness for plaintiff, and he later appeared and was further examined by her attorney.

A physician called by defendants, who had testified that he had never before acted as a witness for defendant rail-

way company, was on cross-examination asked the. following questions: "You want to make a good impression and show that you are the right kind of an expert for them, don't you?"; also, "I asked you if it was not true, this being your first experience for the Market Street Railway in court, you wanted to obtain further employment from them in this way, and wanted to make a good impression on them by showing that you are the right kind of an expert for them." Nothing tending to impeach the qualifications or credibility of this witness was adduced, and the purpose of these questions evidently was to cause the jury to infer that for the sake of future employment the witness would color his testimony so as to make it favorable to the defendants.

The argument of plaintiff's attorney to the jury contained numerous erroneous statements with respect to the testimony, and is replete with abusive references to defendants and their counsel. While it may be that these statements alone would not be sufficient to warrant a reversal, their effect must be considered in connection with the other acts complained of.

In each instance objection was made and the acts and statements assigned as misconduct. Usually an admonition to disregard the statements was given the jury, and the court endeavored to remove any prejudicial effect likely to be caused thereby. They were, however, so numerous, and their tendency so manifestly prejudicial, that it is doubtful whether a harmful result could have been prevented.

In *Keena* v. *United Railroads,* 197 Cal. 148 [239 Pac. 1061], conduct similar in character to the above was considered. There counsel for Keena, without cause and in the presence of the jury, charged that defendant had suppressed evidence. This was held to be misconduct; and it appearing as a reasonable probability that its effect was to influence the jury, the judgment was reversed. Likewise, denunciations of defendant's counsel by reference to matters having no connection with the case and calculated to prejudice the jury have been condemned. (*Peacock* v. *Levy,* 114 Cal. App. 246 [299 Pac. 790].) And the same is true of suggestions to the effect that a party charged with negligence was insured against loss. (*Curtis* v. *McAuliffe,* 106 Cal. 1 [288 Pac. 675].) The rule has also been applied to erro-

neous statements by counsel as to the law of the case. (*Baroni* v. *Rosenberg*, 209 Cal. 4 [284 Pac. 1111].)

The conduct complained of, commencing with the examination of the jurors, the implied charges that defendant company had attempted to suppress evidence, the questions asked the latter's medical witness, together with the matters stated in the argument, strongly indicated a settled intention to prejudice the jury against the defendants. As was said in *Lafargue* v. *United Railroads*, 183 Cal. 720 [292 Pac. 538, 541], and quoted with approval in the Keena case, *supra*, "it seems to us that an entirely false quantity was injected into the case by plaintiff's counsel . . . and that false quantity so introduced was of a character so prejudicial to the defendant as to have prevented the jury from considering the case fairly upon its real merits".

While usually the act of a trial court in granting or denying a new trial will not be disturbed, here the evidence on the question of the defendants' negligence was close, and the jury would have been justified in finding that the acts of the child were the sole proximate cause of her injuries. In view of this the errors complained of, namely, the refusal to strike the testimony of McDonnell, the admission in evidence of the ordinance mentioned, the instruction regarding the effect of its violation, with the acts of counsel above discussed, considered from the point of view of their cumulative effect, reasonably support the conclusion that but for these matters the result would have been different, and that defendants' motion should have been granted. The publications mentioned were, of course, material only as facts showing an intention to influence the jury.

Other questions are raised by the appellants, but these require no discussion.

The judgment is reversed.