[S. F. No. 2950.   Department Two.—January 20, 1905.]

J. LEONARD KIDWELL, Respondent, v. WILLIAM B. KETLER et al., Minors, Appellants; MICHAEL FLOOD, as Trustee, etc., Respondent; MARY E. P. KETLER, as Administratrix, etc., Intervener, Respondent.

TRUST. UNDER WILL—CONSTRUCTION—ADMISSION OF PLEADINGS—DE-RAIGNMENT OF TITLE—CONCLUSIONS OF LAW.—Where a complaint to terminate a trust under a will sets forth the will and claims title to one half of the trust estate, and an answer of minors does not deny the plaintiff's averment of interest, and a cross-complaint of the minors sets up the will, deraigning title thereunder, and admitting plaintiff's title, the allegation and admission of title are of mere conclusions of law depending upon the true construction of the will; and it is for the court to judge of the legal consequences of such construction.

ID.—ADMISSIONS BY GUARDIAN—MINORS NOT BOUND.—Minors who necessarily appear by their guardian are not bound by the admissions of the guardian which mean the sacrificing or giving away of the ward's property.

ID.—CONSTRUCTION PER STIRPES.—In the construction of the trust under the will the children of deceased beneficiaries take *per stirpes,* and not *per capita,* unless the language used is such as to exclude that intention. Where it is apparent that in the disposition of the income of the trust estate between two children a distribution *per stirpes* was intended to the children of a deceased child, in the event of the death of one of them, leaving children, it is reasonably certain that, in the event of the death of both of them, leaving children, the testator contemplated a division of the *corpus* of the estate between their children *per stirpes.*

ID.—DISTRIBUTION OF RENTS OF REAL ESTATE—LONG-PRACTICED CON-STRUCTION OF WILL ADHERED TO.—Where the trust clause of the will, besides directing the sales of certain lands and the investment and payment of the income by the trustees, was inartificially

drawn as respects the rents and profits of other real estate specifically devised, and the trustees, with the approval of the court in the settlement of their accounts, and with the long acquiescence of the beneficiaries for a period of thirty-five years, distributed the rents and profits of such real estate as part of the income, instead of investing the same, as now contended for, and only distributing the proceeds thereof, such long-practiced construction of the will will not be disturbed in favor of the construction contended for.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Stuart S. Wright, Wright & Wright, Alexander D. Keyes, and Thomas P. Boyd, for Appellants.

The admissions of the pleadings which set up the will, as respects title thereunder, were of plain conclusions of law and not material. A conclusion of law is not issuable. (*Nelson* v. *Murray,* 23 Cal. 338; *Wormouth* v. *Hatch,* 33 Cal. 121; *Turner* v. *White,* 73 Cal. 299; *Brewster* v. *Striker,* 2 N. Y. 19.) A guardian cannot limit his ward by admissions. (*Cochran* v. *McDowell,* 15 Ill. 11; *Chaffin* v. *Heirs of Kimball,* 23 Ill. 35; *Cooper* v. *Mayhew,* 40 Mich. 528; *Collins* v. *Trotter,* 81 Mo. 275, 280; *Crain* v. *Parker,* 1 Ind. 374; *Lathers* v. *Van Epp,* 4 Lansing, 213.) The plaintiff and the minor defendants should share *per capita* as joint tenants of the personal property. (2 Roper on Legacies, pp. 1359, 1360; *Gray* v. *Willis,* 2 P. Wns. 529; *Keys* v. *Luffkin,* 1 Dickens, 392; *Mosby* v. *Bird,* 3 Ves. 628; *Crooke* v. *De Vandes,* 9 Ves. 197; *Campbell* v. *Campbell,* 4 Bro. C. C. 12; *Gregory* v. *Smith,* 9 Hare, 718; *Emerson* v. *Cutler,* 14 Pick. 108; *Gallagher* v. *Rhode Island Hospital etc. Co.,* 22 R. I. 141; *Gilbert* v. *Heirs of Richards,* 7 Vt. 203; *De Camp* v. *Hall,* 42 Vt. 483; *Farr* v. *Trustees of A. O. U. W.,* 83 Wis. 446.[1]) A gift to the children of several persons is *per capita,* and not *per stirpes,* unless a different intention is shown. (2 Jarman on Wills, p. 111; Hawkins on Wills, p. \*111; Schouler on Wills,, sec. 540; 29 Am. & Eng. Ency. of Law (1st ed.) pp. 421, 422, 423; *De Laurencel* v. *De Boom,* 67 Cal. 362; *Brown* v. *Brown,*

[1] 35 Am. St. Rep. 73.

6 Bush (Ky.) 648; *Nichols* v. *Denny,* 37 Miss. 59; *Collins* v. *Hoxie,* 9 Paige, 81; *Britton* v. *Miller,* 63 N. C. 268; *Hodges* v. *Phelps,* 65 Vt. 303; *Pitney* v. *Brown,* 44 Ill. 363; *Walters* v. *Crutcher,* 15 B. Mon. 2; *Dole* v. *Keyes,* 143 Mass. 237; *Gest* v. *Way,* 2 Whart. 445; *Lynn* v. *Hall,* 101 Ky. 738;[1] *Rogers* v. *Rogers,* 2 Head, 661.)

McNair & Somers, and Thomas F. Barry, for J. Leonard Kidwell, Respondent.

Parties are bound by their own pleadings (*Wilcoxson* v. *Burton,* 27 Cal. 228;[2] *Page* v. *Willett,* 38 N. Y. 28), and infants may be concluded by decree. (10 Am. & Eng. Ency. of Law, p. 694; *Ralston* v. *Lahee,* 8 Iowa, 17;[3] *Boyd* v. *Roane,* 49 Ark. 399; *Wrisleys* v. *Kenyon,* 28 Vt. 5; *Darvin* v. *Hatfield,* 4 Sandf. 468.) The old English rule as to *per capita* construction does not prevail in the United States. The will shows a clear intent to have the *corpus* of the trust fund vest *per stirpes.* (*Henry* v. *Thomas,* 118 Ind. 23; *Vincent* v. *Newhouse,* 83 N. Y. 508; *Ferrer* v. *Pyne,* 81 N. Y. 284; *Bool* v. *Mix,* 17 Wend. 119;[4] *Lowe* v. *Carter,* 2 Jones Eq. 377; *Wood* v. *Robinson,* 113 Ind. 323; *In re Ihrie's Estate,* 162 Pa. St. 372; *Bethea* v. *Bethea,* 116 Ala. 265; *Lee* v. *Baird,* 132 N. C. 755; *McLean* v. *Williams,* 116 Ga. 257.) The parties are bound by the decrees settling the accounts of the trustees, including payments for rents of the real estate, and they cannot be attacked collaterally. (*Crew* v. *Pratt,* 119 Cal. 137; *Estate of Pratt,* 119 Cal. 156; *Moore's Appeal,* 10 Pa. St. 435; *Boyd* v. *Caldwell,* 95 Ind. 392; *Abbott* v. *Bradstreet,* 3 Allen, 587.)

HENSHAW, J.—Jacob C. Beideman died in 1865, leaving a will bearing date January 26, 1863. By the first paragraph of his will he directed that all his real estate excepting three parcels be sold, and that out of the proceeds of the sale his debts be paid. The second paragraph of the will is as follows:—

"Second. I give, bequeath and devise to Henry F. Williams, of the said city and county of San Francisco, twenty thousand dollars ($20,000) in money, proceeds of the sale above

---

[1] 72 Am. St. Rep. 429.          [3] 74 Am. Dec. 291.
[2] 87 Am. Dec. 66.               [4] 31 Am. Dec. 285.

provided for, remaining after the said expenses and my just debts are paid; and also a certain water lot (so called) belonging to me, with the improvements thereon, situate, lying and being at the northeast corner of Clay and Davis streets in said city and county; also fifty vara lot number five (5) in block number seventy-three (73), Western Addition so called, and the improvements thereon, situate, lying and being on Hayes Street, between Van Ness Avenue and Franklin Street, in said city and county, and also block number two hundred and seventy-nine (279), in said Western Addition, and bounded by Ellis, Webster, Eddy, and Buchanan streets, in said city and county and the one-half of the rest, residue and remainder of my property mentioned in the tenth subdivision of this instrument, if any, that shall remain after the gifts, devises and bequests, theretofore provided for, shall be answered and fulfilled; in trust, however, for the following uses and purposes, and none other or different, that is to say, that the said sum of twenty thousand dollars, and the net proceeds of said lands, hereinabove given, devised and bequeathed be, by the said Henry F. Williams, and his successor and successors, who shall have the trust hereby created invested in mortgage securities, on improved real estate, situated in the said city and county, and that the net proceeds of such investments or so much of the same as shall be necessary therefor, be expended by the said Henry F. Williams or the person having charge of said trust, for the proper maintenance, and education of my niece Katie Ketler and my nephew Willie Ketler, both of Wilmington, state of Delaware, and the children of my deceased sister, Sarah Ann Ketler, until the said Willie Ketler shall attain his majority, at which time any of such proceeds then remaining unexpended, to be divided between the said Katie and Willie, share and share alike; and thereafter all net proceeds from said investments to be equally divided between the said Katie and Willie, during their natural lives; but if either of them die without issue, then in that case the whole of such net proceeds shall be paid to and become the absolute property of the survivor of them during his or her natural life; and in case either of them die with issue surviving, then and in that case, one-half of the net proceeds of such investment shall be expended for the maintenance and education of such issue,

until both the said Katie and Willie shall have deceased, *when the said investment, property, and the net proceeds thereof, then remaining, shall become the absolute property of the issue of the said Katie and Willie then surviving;* and in default of issue of either the said Katie or Willie then both surviving, then and in that case the said investment and property, and the net proceeds thereof then remaining shall be distributed among their then heirs at law, according to the statutes of descents and distribution, now existing in the state of California."

The property so distributed by the court in probate to the trustee under the terms of this trust has been managed by trustees ever since. Katie Ketler married Kidwell, and died in 1871. Her sole surviving child is the plaintiff herein. Willie Ketler died in 1901, leaving as surviving children the five minor defendants. By the terms of the trust it ceased and determined upon the death of Willie Ketler, and this action was brought to terminate it, for an accounting by the trustee, and for a distribution of the trust properties, in accordance with the terms of the trust. The plaintiff set forth the will of Beideman in full, with the other facts hereinabove stated, and alleged that one half of the trust property had vested in him under the terms of the trust, and one half in the minor defendants; and this allegation was not denied by the minor defendants. The minor defendants, besides answering, filed a cross-complaint, in which they alleged that the rents of the real estate devised in trust had not been invested, but had been paid out to Willie Ketler, and to the paintiff, Kidwell, and his two brothers, who had subsequently died. This allegation was not denied. They also alleged that one of the trustees had paid to the plaintiff, Kidwell, and one of his brothers a large part of the capital fund of the trust estate. This was denied, but the trustee Flood admitted that he had paid $3,054 to the plaintiff and his two brothers by order of the superior court of the city and county of San Francisco. Upon this issue the court found that the plaintiff had received $425, while his deceased brother had received $2,629. The minor defendants also, in their cross-complaint, set forth in full the will of Jacob Beideman, and then alleged "that by the terms of the said trust created by and in the said will for the benefit of the said Katie and Willie Ketler and

their issue, the property and money therein devised and bequeathed, with the rents, issues and profits thereof, were given and devised in fee, one half to the issue of Willie Ketler, and one half to the issue of Katie Ketler, to take effect and vest at the time of the death of the survivor of the said Willie and Katie Ketler.''

The court made its findings and conclusions of law, and in the latter declared that upon the death of William J. Ketler, upon the eighth day of April, 1901, all of the trust property became the absolute property in fee of the beneficiaries in the following proportions: ''To the plaintiff an undivided one-half interest; to the minor defendants each an undivided one-fifth interest of an undivided one-half interest.'' Upon the motion for a new trial these conclusions of law were complained of, and upon this appeal they form the principal matter in controversy between the parties. It is not surprising that the court should have given the construction to the trust which it did, even if it were erroneous, since both parties by their pleadings set up the same interest, and the court adopted a construction of the trust which, at that time, met the views of all the beneficiaries under it.

Thus at the threshold of the inquiry as to the true construction of the trust, appellants are met with the objection of the respondent that they are bound, first, by their admissions of the allegations of his complaint, and, second, by the identical affirmative allegation which they have made in their cross-complaint. But, answering the respondent's objection, it is to be noted that both in the complaint and in the cross-complaint, the will of Jacob Beideman is set forth in full, and the deraignment of title is shown in both instances to be from the trust clause of that will. The case presented, therefore, is one where the pleader sets forth his chain of title, and upon that chain pleads ownership. It is uniformly held that an allegation made under such circumstances is an allegation of a conclusion of law not calling for a denial, and not binding upon either party. Thus, as is said in *Gruwell* v. *Seybolt,* 82 Cal. 7: ''Where . . . the pleader sets forth specifically the links in his chain of title, a general allegation of ownership will be treated as a mere conclusion from the facts stated.'' The rule is succinctly laid down in the Encyclopædia of Pleading and Practice (725), as follows: ''Where

the title is specifically, as well as generally alleged, the specific allegations control and qualify those that are general,'' —and this principle has frequently been recognized and applied in this state. (*Levins* v. *Rovegno,* 71 Cal. 273; *Savings and Loan Society* v. *Burnett,* 106 Cal. 514.) The allegation of ownership in the complaint is identical with that in the cross-complaint above quoted. It is alleged ''that by the terms of said trust the parties took title,'' and it is plain that this is but a conclusion of law, deriving its whole and sole force from the trust in the will. This being so, it is not only a mere conclusion of law, but it amounts (if it be an erroneous conclusion) to an admission of the parties which cannot change the law. (*Tiddy* v. *Graves,* 126 N. C. 620.) It is of course well settled that a denial of a conclusion of law is immaterial and raises no issue. (*Nelson* v. *Murray,* 23 Cal. 338; *Turner* v. *White,* 73 Cal. 299; *Wormouth* v. *Hatch,* 33 Cal. 121.) And, as is said in *Brown* v. *Newall,* 2 Mylne & C., 558, ''Now it is a rule of pleading that although a party is bound by the facts which he states, he is not bound by his statement of the legal consequences of those. It is for the court to judge what are those legal consequences.''

Moreover, the defendants in this action were one and all minors, and appeared of necessity by their guardian. The admissions of a guardian which mean the sacrifice and giving away of the ward's property are never held to be binding. (*Cochran* v. *McDowell,* 15 Ill. 11; *Chaffin* v. *Heirs of Kimball,* 23 Ill. 35; *Cooper* v. *Mayhew,* 40 Mich. 528; *Collins* v. *Trotter,* 81 Mo. 275, 280; *Crain* v. *Parker,* 1 Ind. 374; *Lathers* v. *Van Epp,* 4 Lans. 213.)

It must be held, therefore, upon this proposition, that it is a proper subject of inquiry before this court upon this appeal.

The question thus presented for determination is whether under the trust the children of Mary and the children of Willie took *per stirpes,* or whether their issue took *per capita.* Jarman states the rule as follows: ''Where a gift is to the children of several persons, whether it be to the children of A and B, or to the children of A and the children of B, they take *per capita,* not *per stirpes.* But this mode of construction will yield to a very faint glimpse of a different intention from the testator. Thus the mere fact that the only income

until the distribution of the capital is applicable *per stirpes,* has been held to constitute sufficient grounds for assuming that a like principle was to govern the gift of the capital." Says the supreme court of New York (*Ferrer* v. *Pyne,* 81 N. Y. 284), discussing this subject: "The rule referred to [*per capita* distribution] has in modern times been applied with reluctance by some courts, because it had become a rule of property, and by others, out of deference to its supposed authority; but in many if not all cases with open protest, while by others it has been wholly rejected. . . . If, therefore, from any portion of the will an intention can be discovered that the children of the deceased daughter are to take as a class, and not as individuals, that intention must prevail, notwithstanding the rule of construction to which we have adverted." In *Burgin* v. *Patton,* 58 N. C. 426, it is said: "It is well settled as a general rule, that if a testator gives an estate to be equally divided between A and B and the heirs of C, and the latter has several children, the division will be *per capita,* but if there be anything in the will indicative of an intention that the devisees or legatees shall take as families, the general rule will not apply and the property will be divided *per stirpes* and not *per capita.*" And in *Henry* v. *Thomas,* 118 Ind. 23, the proposition is much more strongly stated in the following language: "The rule (as stated by Jarman) has been so far abrogated by the courts of the different states that it no longer has any practical force in the construction of wills, and the weight of the authority is to the effect that the beneficiaries take *per stirpes,* unless the language used in the devise or bequest is such as to exclude that intention." Without further multiplying quotations from authorities, reference may be made to *Minter's Appeal,* 40 Pa. St. 114; *Vincent* v. *Newhouse,* 83 N. Y. 505; *Bool* v. *Mix,* 17 Wend. 119;[1] *Adler* v. *Beall,* 11 Gill & J. 123; *Ihrie's Estate,* 162 Pa. St. 372; *Lackland's Heirs* v. *Downing's Exrs.,* 11 B. Mon. 32; *Bond's Appeal,* 31 Conn. 183; *Holbrook* v. *Harrington,* 16 Gray, 102; *McLean* v. *Williams,* 116 Ga. 257.

Construing this trust with a view thus to arrive at the intent of the testator, it is at least apparent that in the disposition of the income to arise from the trust property he contemplated a distribution *per stirpes.* When the younger of

[1] 31 Am. Dec. 285.

the two attained majority any surplus proceeds of the invest-ments was to be divided between them equally, and thereafter all the net proceeds were to be divided between them equally. In the event of one dying with issue, it was the share of the proceeds which had been paid to the parent, and that share only, which was to be given to the children, and we thus come to the final clause requiring construction—the disposition to be made in the event that actually arose—when both have died, both leaving children. It would seem to be reasonably certain that as the trustor contemplated a disposition of the proceeds of the trust between the two as separate families, so he contemplated the division of the *corpus* of the trust in like manner, *per stirpes,* and it follows that the court correctly construed the trust in this regard.

There came into the hands of the trustees under this trust the three pieces of real property specifically devised. Such real estate as was embraced in the "one-half of the rest, re-sidue, and remainder of my property" was actually converted by sale into money and upon distribution this money with the three pieces of realty was turned over to the trustees. It appears that the trustees invested the money as called for by the trust and paid to the beneficiaries the net income of these investments and the net rents of the property. This method of disposition was acquiesced in by Willie and Katie during their lifetimes, and upon the death of Katie the same method of disposition was adopted during the continued life-time of Willie,—that is to say, one half of the "proceeds," including one half of the rents of the real estate, was paid to Katie's issue, while Willie took the other moiety. This was continued until the death of Willie, when his issue here assert that this division was violative of the terms of the trust, their contention being that, under the trust, the rents of these three pieces of real estate were not to be paid over as "proceeds," but were to be invested, and the "proceeds" of this investment only were to be divided; therefore, as plaintiff had shared in the distribution of these rents with their father, he should be called upon to account and make over to them the proportion of that which is their due. As has been said, this division of the rents has continued for many years—indeed, for the long period of thirty-five years. It was acqui-esced in by all of the beneficiaries of the trust, and it received

the sanction of the court which, at least tacitly, put this construction upon the trust in the settlement of the trustee's account. The true construction of the trust in this regard does not come before us, therefore, as a case of first impression. It has received contemporaneous construction and acquiescence for thirty-five years, and while this would not be a controlling weight, with a clear abuse of the trust shown, or a clear misappropriation or misdirection of its funds, yet, in a case such as this, where the trust in some respects is inartificially drawn, where the word "proceeds," itself a word of loose and varying significance, is employed with different meanings, we are far from saying that it was not the actual intent of the testator that the rents were to be paid over, as in fact was done. And such being the case, we are not inclined to disturb the ruling of the trial court based upon such long acquiescence.

For which reasons the judgment and order appealed from are affirmed.

McFarland, J., and Lorigan, J., concurred.

Hearing in Bank denied.

146   21
148   663
148   664