[Civ. No. 43500. Second Dist., Div. Three. Dec. 27. 1974.]

MABEL ROBINSON et al., Plaintiffs and Appellants, v.
CLEROW WILSON, Defendant and Respondent.

94

**COUNSEL**

Gittler & Greenberg, David H. Greenberg and Sidney J. Gittler for Plaintiffs and Appellants.

Kaplan, Livingston, Goodwin, Berkowitz & Selvin, Herman F. Selvin, Michael Bergman, John A. Schulman and Sheldon W. Presser for Defendant and Respondent.

**OPINION**

**POTTER, J.**—Plaintiffs, Mabel Robinson (hereinafter referred to as Mabel) and Joseph Robinson (hereinafter referred to as Joseph), by his guardian ad litem, Mabel Robinson, appeal from a judgment dismissing their action against defendant Clerow Wilson for support and to establish paternity of Joseph. The suit as originally filed named only Mabel as plaintiff. Joseph was added as a plaintiff by a stipulation amending the complaint and an order granting Mabel's petition for appointment as guardian ad litem on January 26, 1973. On the same date a stipulation was entered into between plaintiffs and defendant concerning the conduct and effect of polygraph examinations to be administered

to Mabel and to defendant. The full text of said stipulation is pertinent to this appeal and is reproduced below as a footnote.[1]

[1]"IT IS HEREBY STIPULATED AND AGREED by and between plaintiff Mabel Robinson, acting in her individual capacity, plaintiff Joseph Robinson, by Mabel Robinson, his Guardian ad Litem, and defendant Clerow Wilson, a.k.a. Flip Wilson, as follows:

"1. The hearing on plaintiffs' order to show cause shall be continued to Tuesday, February 20, 1973 in Department 7 of the above-entitled Court at 9:00 a.m.

"2. Each of plaintiff, Mabel Robinson and defendant, Flip Wilson, shall submit to a polygraph examination to be administered by an examiner mutually agreed upon by the parties' counsel of record from a list submitted to them by Judge Harry L. Hupp. In the event the parties are unable to mutually agree upon said examiner on or before January 26, 1973, at 3:00 p.m., said examiner shall be selected by Judge Hupp.

"3. The parties' counsel of record, acting in consultation with the polygraph examiner so selected, shall mutually agree in writing in advance of said polygraph examinations to the exact wording of each question to be asked by the polygraph examiner. In the event the parties' counsel of record are unable to so agree prior to January 29, 1973, Judge Hupp shall determine, in consultation with the polygraph examiner and the parties' counsel of record, the exact wording of each such question.

"4. Said polygraph examinations shall each be conducted by the polygraph examiner selected pursuant to this stipulation on January 29, 1973 or the closest date thereto mutually agreed upon by the parties' counsel of record.

"5. In substance, the following questions shall be asked of Flip Wilson and Mabel Robinson in their respective polygraph examinations:

"*Question to be Asked of Flip Wilson:*

" 'Did you have sexual intercourse with Mabel Robinson during the period between August 16, 1971 and September 13, 1971?' (Hereinafter 'Q. No. 1')

"*Questions to be Asked of Mabel Robinson:*

"(i) 'Did you have sexual intercourse with Flip Wilson during the period between August 16, 1971 and September 13, 1971?' (Hereinafter 'Q. No. 2')

"(ii) 'Did you have sexual intercourse with any man other than Flip Wilson during the period between August 16, 1971 and September 13, 1971?' (Hereinafter 'Q. No. 3')

"6. Assuming that defendant Flip Wilson shall respond in the negative to Q. No. 1 during the course of his polygraph examination and that plaintiff Mabel Robinson shall respond in the affirmative to Q. No. 2 and in the negative to Q. No. 3 during the course of her polygraph examination, the following truth table details the permutations of the truthfulness of their responses.

| Variation Number | Response to Question No. 1 | Response to Question No. 2 | Response to Question No. 3 |
|---|---|---|---|
| 1 | Truth | Truth | Truth |
| 2 | Truth | Truth | Deception |
| 3 | Truth | Deception | Truth |
| 4 | Truth | Deception | Deception |
| 5 | Deception | Truth | Truth |
| 6 | Deception | Truth | Deception |
| 7 | Deception | Deception | Truth |
| 8 | Deception | Deception | Deception |

"7. Following the conclusion of said polygraph examinations, the polygraph examiner shall analyze the results of each said polygraph examination and prepare his conclusions relating thereto with respect to the extent of truthfulness with which defendant Flip Wilson has responded to Q. No. 1 and with which plaintiff Mabel Robinson has responded to Qs. Nos. 2 and 3. Said polygraph examiner shall thereafter prepare a written report of said conclusion and submit a copy of said report to each of the parties' counsel of record.

"8. In the event the polygraph examiner states in writing provided to each counsel of

The stipulation was entered into between the parties after an in-chambers conference on January 23, 1973, which was not reported. The court stated on the record, however, the result of the conference to be an agreement that the matter be continued and that "the parties anticipate filing a rather extensive stipulation as to procedure, in the meantime, in the next few days." The court's prior approval of the arrangement embodied in this stipulation and the reason for it were stated on the record by the court on a later occasion, as follows: "I did very much approve of the parties' agreement" and that such approval was based upon the fact that "both counsel, I think, agreed in chambers that were the case to be tried, that ultimately [it] would develop into what we might call a straight swearing match between the plaintiff and the defendant with very little to corroborate the testimony of either one."

Thereafter, on January 29, 1973, the polygraph examinations contem-

record, that he is unable to reach a conclusion about the truthfulness of either defendant's response to Q. No. 1 or plaintiff's response to Q. No. 2 or Q. No. 3, the results of the polygraph examinations shall be deemed inconclusive.

"9. Furthermore, in the event that the result of the polygraph examinations, as stated by the polygraph examiner in writing, is Variation No. 1, 2, 3, 6, 7 or 8, said result shall be deemed inconclusive.

"10. If the test results be inconclusive, pursuant to either Paragraph 8 or Paragraph 9, the parties will sign a stipulation agreeing that the results are inconclusive and will submit that stipulation to the Court on or before 9:00 a.m. Tuesday, February 20, 1973. Any inconclusive results, of the polygraph examinations provided for by this stipulation, shall be deemed inadmissible in both the order to show cause hearing and any plenary trial that occurs in this action. Upon a determination that the examinations produced inconclusive results, the hearing on plaintiffs' order to show cause shall proceed, on the merits, as if this stipulation had not been entered into and as if the said polygraph examinations had not occurred.

"11. In the event that the result of the polygraph examinations is Variation No. 4, said polygraph examiner will so testify in Court. In the event the Court finds, based upon the physical results of said examinations (i.e., the charts) and the testimony of the polygraph examiner, as supplemented by any interrogation the Court may wish to make of said examiner, that Variation No. 4 has occurred, plaintiffs Mabel Robinson and Joseph Robinson, suing by his Guardian ad Litem, Mabel Robinson, shall dismiss the instant action with prejudice and release defendant Flip Wilson of and from any and all liability based upon, arising out of or in any way connected with the allegations of their complaint herein.

"12. In the event that the result of the polygraph examinations is Variation No. 5, said polygraph examiner will so testify in Court. In the event the Court finds, based upon the physical results of said examinations (i.e., the charts) and the testimony of the polygraph examiner, as supplemented by any interrogation the Court may wish to make of said examiner, that Variation No. 5 has occurred, defendant shall be declared to be the father of Joseph Robinson and the Court will proceed to make a determination as to plaintiffs' claims for child support, costs and attorneys' fees. This Court will receive evidence on those issues and enter its judgment with respect thereto. Said award shall have the same force and effect, and shall be based upon the same factors, as a similar award entered after a full hearing on the issue of paternity.

"13. The fee of said polygraph examiner for the services described herein shall be paid by defendant Flip Wilson.

"This stipulation may be executed in any number of counterparts and shall be binding upon each of the parties hereto."

plated by the stipulation were administered to Mabel and to defendant by Kenneth W. Scarce, the examiner designated in accordance with the terms of the stipulation. On that date both parties' counsel signed a stipulation stating that counsel "do hereby agree to the wording of the questions to be asked the parties as a part of their polygraph examinations . . . ." The stipulation did not attach as exhibits any list of questions, though apparently notes of questions to be used were discussed with counsel.

As a result of the polygraph examinations, the examiner reported that "the results of the examination fall within Variation No. 4" (that defendant was telling the truth when he denied having sexual intercourse with Mabel during the period between August 16, 1971 and September 13, 1971, and that Mabel's contrary assertion was deception as was her denial of intercourse with other men during that period).

On February 20, 1973, a further hearing in the matter was conducted for the purpose of presenting the testimony of Mr. Scarce in accordance with the stipulation. The proceedings in that regard were not completed on that date and continued over into the following day. The testimony of Mr. Scarce is reported in a transcript which comprises 190 pages, the majority of which reports the cross-examination by counsel for plaintiffs.

Mr. Scarce's testimony included a full recital of his qualifications, an explanation of the polygraph and its operation, the witness' statement of his opinion that variation No. 4 had occurred, and a detailed specification of his reasons for such opinion in the course of which charts produced by the polygraph during the examination were shown to the court and the indications of truth and of deception embodied therein were pointed out.

At the conclusion of this testimony, counsel for plaintiffs raised two objections to any finding being made pursuant to the stipulation "based upon" the results of the examinations and the testimony of Mr. Scarce. These were (1) that questions were asked of defendant and of Mabel which had not been previously submitted to counsel for approval, and (2) that the witness' testimony showed that his opinion was based in part upon the observation noted in his written report that Mabel "deliberately attempted measured overbreathing in an attempt to prevent her charts from being interpreted. This in itself is indication of deception," all of which, he argued, was "outside Mr. Scarce's area of expertise," and "outside the realm of the stipulation." Counsel for plaintiffs concluded his argument in support of the objections by stating "that *unless* the court

believes that the stipulation was followed to the letter of the agreement . . . then the court should find that the test results are inconclusive, and, therefore, order a full trial on the merits of the case with all the evidence to be presented." (Italics added.)

At that point the trial court overruled both objections and orally announced his intended decision that the testimony of Mr. Scarce was persuasive that variation No. 4 had, in fact, occurred, and required dismissal of the action. In response to the oral demand of plaintiffs' counsel, the court instructed counsel for defendant to prepare findings of fact, conclusions of law and judgment of dismissal. Thereafter, proposed findings of fact, conclusions of law and judgment were submitted by counsel for defendant. Though no objections to the proposed findings were received, the court, on its own motion, deleted several paragraphs on the ground they "contained evidentiary matter,"[2] and made minor revisions to others before incorporating them in a redraft which was signed by the court. The redraft was circulated to both counsel with a notice that it would be signed unless the court received objections from counsel within six days. When no objections were received, the findings, conclusions and the judgment dismissing the action were signed by the court.

Finding of fact No. 1 recited the filing of the January 26, 1973, stipulation providing for polygraph examinations, and found that "[s]aid stipulation, subsequently introduced into evidence, accurately embodied the parties' agreement and was and is fair and equitable to each of the parties in all respects, and was approved by the Court." Subsequent findings recited the pertinent provisions of the stipulation, the conduct of the examinations and the subsequent giving of testimony by Mr. Scarce, whom the court found to be "competent, unbiased and clearly qualified as a polygraph expert." The court then found that the polygraph examinations "were in full compliance with the written stipulation of the parties." The finding dispositive of the litigation, however, was finding No. 7, which reads as follows: "The Court finds, based upon the testimony of the polygraph examiner and the physical results of the polygraph examinations (i.e., the charts) that Variation No. 4 has in fact occurred, i.e., that plaintiff Mabel Robinson was untruthful when she stated that she had sexual intercourse with defendant Flip Wilson between August 16, 1971, and September 13, 1971, that plaintiff Mabel Robinson was untruthful when she denied having had sexual intercourse with any man other than defendant Flip Wilson between August 16,

[2]This appears from the superior court file which has been transmitted to this court pursuant to rule 12(a), California Rules of Court.

1971, and September 13, 1971, and that defendant Flip Wilson was truthful when he denied having sexual intercourse with plaintiff Mabel Robinson between August 16, 1971, and September 13, 1971."

Finding No. 8 stated the ultimate fact (established by finding No. 7) that defendant "is not the father of the minor child Joseph Robinson," and finding No. 9 concluded that, pursuant to the stipulation, defendant's motion to dismiss the action "must be granted."

*Issues*

On appeal plaintiffs repudiate the stipulation for polygraph examinations on the ground that it was beyond the authority of Mabel, as guardian ad litem of Joseph, to enter into such stipulation and that such stipulation was, in any event, an invalid attempt to limit the court's power to receive all relevant evidence. Plaintiffs also claim that the examinations were not conducted in accordance with the stipulation and, therefore, the results were not admissible under the stipulation. Finally, plaintiffs contend that the polygraph examiner exceeded his authority under the stipulation and his qualifications by basing his opinion upon observation of alleged intentional overbreathing by Mabel. The issues thus presented are:

1. Was the stipulation for the conduct of the polygraph examinations valid?

2. Were the examinations conducted in accordance with the stipulation?

3. Did the polygraph examiner exceed his authority or state an opinion outside the area of his expertise?

*The Stipulation for Polygraph*
*Tests Was Valid*

■ Plaintiffs attack the stipulation for the conduct and use of the polygraph examinations on the ground that it was an agreement "by stipulation to allow the results of a polygraph examination to be conclusive evidence" which in effect "deprived the infant plaintiff-appellant of his day in court." Two subsidiary propositions are involved in this attack. The first is that "the guardian ad litem cannot waive or surrender any material rights of an infant litigant" and the second is that the stipulation was an invalid attempt "to oust the court of the jurisdiction given to it by law to admit all evidence applicable to a cause

and to render judgment accordingly."

Plaintiffs' argument rests almost entirely upon the decision of this court in *Berry* v. *Chaplin,* 74 Cal.App.2d 652 [169 P.2d 442], and cases cited therein. In *Berry* a stipulation entered into between the guardian ad litem for the infant and the defendant provided that blood tests would be conducted upon the infant and the defendant by three physicians (one chosen by each of the parties and the third chosen, in turn, by them), and that if two of said physicians determined from such tests that Chaplin was not the father and so reported, the action would be dismissed by the plaintiff. In the event the plaintiff failed to do so, provision was made for dismissal by the court upon presentation of the reports of the physicians acknowledged by them before a notary public. Tests were conducted pursuant to the stipulation and all three physicians reported that Chaplin could not be the father.

The trial court, nonetheless, denied defendant's motion to dismiss and this was affirmed on appeal. The opinion invalidated the stipulation on two grounds. The first of these was the lack of power of the guardian ad litem to waive substantial rights of the minor by agreements "improvidently made" and without any prior court determination that "the terms of the stipulation were fair and reasonable." The court said in this respect: "Said stipulation and the attached agreement of Joan Berry were presented to said Judge William S. Baird, who, without a hearing, without the taking of any evidence, and without making inquiry or a finding as to whether the stipulation or the order was for the best interests of plaintiff child, signed an order reading as follows: 'Upon reading the foregoing stipulation and statement and agreement of Joan Berry, it is ordered that said stipulation be and the same is hereby approved and the parties are ordered to perform the terms thereof as set forth therein.' The stipulation, agreement, and order were filed on June 10, 1943.

"The guardian *ad litem* and her attorneys were without power to enter into and the court was without power to approve the stipulation. Section 196a of the Civil Code provides that a civil suit in behalf of a minor illegitimate child to enforce the obligation of a parent to support it may be maintained by a guardian *ad litem* and in such action the court has power to order and enforce the performance of such obligation. The power of a guardian *ad litem* in such an action is not unlimited. In effect the court is the guardian, and the person named as guardian *ad litem* is an officer of the court appointing him and is the agent of the court. 'He is like an agent with limited powers.' (*Cole* v. *Superior Court,* 63 Cal. 86, 89

[49 Am.Rep. 78].) A minor, who must of necessity appear by his guardian, is not bound by the admissions of the guardian which mean the sacrifice or giving away of the ward's property. (*Kidwell* v. *Ketler,* 146 Cal. 12, 18 [79 P. 514]. See also, *Waterman* v. *Lawrence,* 19 Cal. 210, 217 [79 Am.Dec. 212].) The relationship between a guardian *ad litem* or the attorney whom he employs and the minor is not the same as that between an attorney and an adult client. It is the duty of the guardian and the attorney to protect the rights of the minor, and it is the duty of the court to see that such rights are protected. The court may set aside or disregard concessions of the guardian which have not already been judicially approved and which are shown to the court to have been improvidently made. Any acts or concessions that apparently waive or surrender any material right of the minor, such as *the right to a trial,* should be set aside unless they be shown to be beneficial or, in any event, not prejudicial to the rights and interests of the minor. (*Eidam* v. *Finnegan,* 48 Minn. 53 [50 N.W. 933, 934, 16 L.R.A. 507].) The appointment of a guardian *ad litem* is not a bare technicality and the office of guardian involves more than perfunctory or shadowy duties. It is the duty of a guardian *ad litem* to protect or defend a suit, as the case may be. The guardian *ad litem* can neither admit anything against nor waive anything in favor of his ward, but the adversary of the infant must be required to prove his whole case. (*Greene* v. *Mabey,* 35 R.I. 11 [85 A. 118, 120]; *Spotts* v. *Spotts,* 331 Mo. 917 [55 S.W.2d 977, 983, 87 A.L.R. 660].)

"In the instant case, before the issues were joined between plaintiff and defendant by the filing of the latter's answer, the stipulation was entered into and presented to Judge Baird for his approval. No evidence was introduced from which the court could determine whether the terms of the stipulation were fair and reasonable or whether the interests of the minor were protected. The instrument provided that judgment should go against the minor by way of dismissal of the action in the event that two of the physicians made a report, which was not required by the stipulation to be verified, favorable to defendant. Without knowledge of the facts the court could not exercise supervision over the rights of the minor or the acts of the guardian *ad litem.* The order recited that 'upon reading the foregoing stipulation' the same was approved and the parties were ordered to perform its terms. This was an approval of what had been done by the guardian and the attorneys not because the judge who signed the order found that it was for the best interests of the minor but solely because the consent of the guardian and her attorneys had been given and they were satisfied.

"The effect of the stipulation in question here was to rest the final

judgment and the determination of the rights of the unborn infant solely upon the unverified report of two physicians." (74 Cal.App.2d 652, 656-658, 660.)

The bases of the court's decision in *Berry,* insofar as it is founded upon lack of authority of the guardian ad litem, are (1) the absence of any court inquiry into the fairness of the stipulation before it was approved, (2) the inability of the blood test results to benefit the minor,[3] and (3) elimination of any semblance of a trial at which facts would be established on the basis of sworn testimony.

The decision of the court in *Berry* is in accordance with earlier decisions of our appellate courts and of the courts of other states cited therein which invalidated admissions in pleadings by guardians ad litem and other prejudicial concessions that could not benefit the minor, especially where no prior court determination of fairness had been made.

The circumstances bearing upon the propriety of the guardian ad litem's representation of the minor in this case are, however, quite different. Prior approval of the stipulation was obtained on the basis that it was "fair and equitable to each of the parties in all respects," the stipulation had the same potential to benefit the minor as it did to benefit defendant, and it contemplated and resulted in a trial at which the fact issue was determined on the basis of sworn testimony with full opportunity for cross-examination.

The court's approval came after an in-chambers conference of which there is no reporter's transcript. However, the court's statements on the record, to which no exception has been taken, indicate that a sound basis for the determination existed. Though both Mabel and defendant had been examined fully in lengthy depositions, counsel for both sides advised the court that "we would just have a straight swearing match with truth difficult to determine without a polygraph examination," because there was "little to corroborate the testimony of either one." The court acted upon the parties' assurance that the result of the polygraph examinations "would be a more scientific way in determining the truth" than a "straight swearing match."

---

[3]Though the opinion of the court does not specifically refer to such circumstance as a basis for holding the guardian ad litem's agreement to the stipulation to have been "improvidently made," it is clear from the court's discussion of the scientific basis for blood grouping tests that it was aware that such tests could only disprove, not establish, that Chaplin was the plaintiff's father.

The record does not disclose the basis upon which the period of conception was defined in the stipulation as being from August 16, 1971, through September 13, 1971. It is, however, patent that such dates were consistent with the date of birth and in view of their specificity must have been supplied by Mabel's obstetrician. The court could not conceivably have found the agreement to be fair and equitable unless these dates limited the period of conception. Consequently, in the absence of a transcript, we must assume that a valid basis for such dates was supplied.

The situation as presented to the court did not, therefore, involve the kind of one-way street embodied in the stipulation in *Berry.* Plaintiffs had as much to lose in a "straight swearing match" as did defendant. By the same token, they had as much to gain by the proposed attempt to resolve the conflict in the testimony through the aid of a scientific method. The stipulation provided for the admission into evidence of the polygraph examination results only if either of two variations deemed to be not "inconclusive" was indicated. If variation No. 4 occurred, the court's finding in accord with the opinion of the polygraph examiner was to result in a judgment for defendant. However, if variation No. 5 occurred, the court's finding in accord therewith was to result in the establishment of Joseph's paternity, leaving for determination the amount of support. There was, therefore, nothing in the stipulation which benefited one party any less than the other or made it inherently "prejudicial to the rights and interests of the minor."

Though polygraph tests are not considered by the courts of this jurisdiction to have achieved such a high degree of reliability that they may be received in evidence without the stipulation of the parties (*People* v. *Thornton,* 11 Cal.3d 738, 763 [114 Cal.Rptr. 467, 523 P.2d 267]), they have long been held admissible pursuant to stipulation, even as against a criminal defendant. (*People* v. *Davis,* 270 Cal.App.2d 841, 844 [76 Cal.Rptr. 242]; *People* v. *Houser,* 85 Cal.App.2d 686, 694-695 [193 P.2d 937].) And there is a growing body of opinion in both government and industry that their reliability has progressed to the point that important decisions can be based upon them. (See *United States* v. *Ridling* (E.D. Mich. 1972) 350 F.Supp. 90.) Under the circumstances, we are not prepared to state that the agreement of the guardian ad litem to admit such evidence was "improvidently made."

Another factor contributing to the reasonableness of the stipulation which was not present in *Berry* was the provision with respect to the manner in which the results of the polygraph examinations would be employed. Rather than being made determinative without being "required by the stipulation to be verified," as in *Berry,* the examiner's

report of the occurrence of either variation No. 4 or No. 5 merely invoked the provision that "said polygraph examiner will so testify in Court." The court was in no respect constrained by the stipulation to find in accordance with such testimony. The disposition of the case in favor of defendant or in favor of plaintiffs depended upon the court finding, "based upon the physical results of said examinations (i.e., the charts) and the testimony of the polygraph examiner, as supplemented by any interrogation the Court may wish to make of said examiner," that variation No. 4 or No. 5 had occurred. The stipulation did not, therefore, result in the surrender of the minor's right to a trial or substitute therefor a disposition based "solely upon the unverified report of two physicians" as the court characterized the arrangement in *Berry*.

In *Cloud* v. *Market Street Ry. Co.*, 74 Cal.App.2d 92 [168 P.2d 191], the court affirmed a judgment for the defendant in an action in which a nine-year-old child was a plaintiff through her guardian ad litem. A jury had been waived by the guardian ad litem, and on appeal this was relied upon by the appellants as a ground for reversal. In affirming the judgment, the court said (74 Cal.App.2d at pp. 101-103): "Appellants first argue that the minor plaintiff could not legally waive her right to trial by jury, nor could such waiver be legally made for her by her guardian *ad litem* or attorney. The precise question appears to have arisen in very few cases. It is settled in this state that a guardian *ad litem* cannot prejudice the substantial rights of a minor by any admissions, waivers or stipulations. (*Kidwell* v. *Ketler*, 146 Cal. 12 [79 P. 514]; *Gackstetter* v. *Market Street Ry. Co.*, 130 Cal.App. 316 [20 P.2d 93].) This rule is not, however, carried to the extent of depriving the guardian *ad litem* or his attorney of the power to bind the minor in the merely procedural steps incident to the conduct of the litigation. In *Western Lumber & M. Co.* v. *Phillips*, 94 Cal. 54 [29 P. 328], the Supreme Court expressly held that a minor acting through his guardian could waive findings. The general rule is thus stated in *Kingsbury* v. *Buckner*, 134 U.S. 650, 680 [10 S.Ct. 638, 33 L.Ed. 1047]:

" 'It is undoubtedly the rule in Illinois, as elsewhere, that a next friend or guardian *ad litem* cannot, by admissions or stipulations, surrender the rights of the infant. The court, whose duty it is to protect the interests of the infant, should see to it that they are not bargained away by those assuming, or appointed, to represent him. But this rule does not prevent a guardian *ad litem* or *prochein amy* from assenting to such arrangements as will facilitate the determination of the case in which the rights of the infant are involved.'

" . . . . . . . . . . . . . . . .

"The question whether to demand a jury trial or waive one and try the

case to the court is one of trial tactics and procedure only, and the waiving of a jury trial does not in any sense affect the substantial rights of a party. If the guardian *ad litem* of a minor has not the legal power to waive a trial by jury it would follow that the trial court must insist on the calling of a jury in every case in which a minor is a party even though no demand for a jury trial is made and the guardian refuses or fails to deposit the jury fees as expressly required by the code. (Code Civ. Proc., § 631, subds. 5, 6, 7.) We are satisfied that the guardian *ad litem* of a minor has the legal power to waive a jury trial."

The stipulation between Mabel, as guardian ad litem, and defendant Wilson in this case may also properly be characterized as an arrangement which "will facilitate the determination of the case in which the rights of the infant are involved." Entering into it was a matter of "trial tactics" and within the power of the guardian, bestowed by section 372 of the Code of Civil Procedure, "to represent the minor."

This, however, does not dispose of the second ground for invalidating the stipulation stated in *Berry*. The court also held that by making the effect of the blood grouping test conclusive, the stipulation was an invalid attempt to "arrogate judicial functions." With respect to this aspect of the case, the court said: "A stipulation that only such evidence as shall be agreed upon by the parties shall be admissible will not be allowed to control the action of the court in the reception of other evidence or to determine the effect to be given to it. Courts will not permit the course of justice to be controlled or the conduct of an action to be circumscribed in such manner as to defeat the ends of justice. Parties cannot arrogate judicial functions to themselves nor can they agree to oust the court of the jurisdiction given to it by law to admit all evidence applicable to a cause and to render judgment accordingly. (*McCormick* v. *Woodmen of the World*, 57 Cal.App. 568, 571 [207 P. 943].) Neither can a court be deprived of its jurisdiction to admit competent circumstantial evidence by an agreement of the parties requiring direct and positive proof of a fact. (*Utter* v. *Travelers' Ins. Co.*, 65 Mich. 545 [32 N.W. 812, 816, 8 A.L.R. 913].) In *Fidelity & Deposit Co.* v. *Davis*, 129 Kan. 790 [284 P. 430, 434, 68 A.L.R. 321], the court said that the experience of seven centuries has proved that the rules of evidence promote the general welfare and are for the best interests of the people, and that an agreement as to what shall constitute conclusive evidence is an attempt to make the court a ministerial officer of the parties to do that which the parties agree shall be done. In *Conwell* v. *Varain*, 20 Cal.App. 521 [130 P. 23], a stipulation was made in open court that the cause be submitted upon the single question of fact whether one line written in ink in a document was above or beneath another line, and that judgment

should be rendered for plaintiff or for defendant accordingly as a handwriting expert appointed by the court should report concerning which line was superimposed upon the other. The court held (p. 528) that while an attorney had authority to stipulate upon certain matters, a stipulation that the cause be submitted upon the unsworn report of an expert and that such report should be conclusive was not to be tolerated.

" . . . . . . . . . . . . . . . .

"The effect of the stipulation in question here was to rest the final judgment and the determination of the rights of the unborn infant solely upon the unverified report of two physicians. This was an attempt to deprive the court of the power to receive any evidence concerning the paternity of the child other than the report of the physicians, and to make conclusive that which has not been declared by the Legislature to be conclusive (see Code Civ. Proc., §§ 1837, 1978), and which the Supreme Court of this state has expressly declared is not conclusive. (*Arais* v. *Kalensnikoff,* 10 Cal.2d 428, 432 [74 P.2d 1043, 115 A.L.R. 163].)" (*Berry* v. *Chaplin, supra,* 74 Cal.App.2d 652, 658-660.)

The principle relied upon by the court has no less vitality today than it did when *Berry* was decided. The repeal of section 1978 of the Code of Civil Procedure[4] in 1965 did not, as defendant contends, destroy the rationale of this rule. At the time of such repeal, section 351 of the Evidence Code was adopted. It provides: "Except as otherwise provided by statute, all relevant evidence is admissible." A trial court is still vested with "jurisdiction given to it by law to admit all evidence applicable to a cause and render judgment accordingly."

The stipulation made in this case, however, does not purport to "control the action of the court in the reception of other evidence or to determine the effect to be given to it."

Though the briefs of both parties contain reference to the "conclusive" effect given to the results of the polygraph examinations by the stipulation, no such effect is given thereto. The stipulation is unambiguous and, as heretofore pointed out, makes no provision whatever for conclusive effect to be given to such results. It does provide that all variations except variations Nos. 4 and 5 shall be "deemed inconclusive" and likewise "deemed inadmissible" but the effect of the occurrence of variation No. 4 or No. 5 is only to make the result admissible, not conclusive. In that event "said polygraph examiner will so testify in Court." It is not even suggested, much less required, that the court find in accordance with his testimony; rather, it is provided that he shall be

---

[4]Section 1978 of the Code of Civil Procedure provided: "No evidence is by law made conclusive or unanswerable, unless so declared by this Code."

examined as a witness by the parties and by the court, should it so wish, and the physical results (i.e., the charts) shall be presented. It is only "[i]n the event the Court finds" the facts to be in accordance with the testimony of the polygraph examiner that the stipulation gives any effect, conclusive or otherwise, to the results of the examinations.

The procedure which was followed pursuant to the stipulation when variation No. 4 was reported by the polygraph examiner followed the clear language of the stipulation. Mr. Scarce was extensively questioned on both direct and cross-examination and by the court as to his qualifications, as to the validity of polygraph testing, and as to his opinion and the reasons therefor. It is clear that if his testimony had not been found persuasive by the court, the parties would have been relegated to the presentation of the uncorroborated testimony of Mabel and of defendant to settle the disputed question of fact.

The parties, therefore, did not by the stipulation "arrogate judicial functions" to themselves, attempt to make any particular evidence conclusive, or otherwise interfere with the court's power to receive and act upon any admissible evidence. It may have been implied that the court would be given the opportunity to make a finding "based upon" the testimony of the polygraph examiner if so disposed without being asked to hear the expected swearing match.[5] However, both parties had already conceded that such testimony would be ineffective to overcome the results of the "scientific method" if they were otherwise persuasive. A party who abstains from tendering evidence which he believes will not advance his cause does not interfere with the court's power to receive and act upon admissible evidence. If, therefore, the stipulation had any such effect, it was not thereby rendered invalid.

In view of this court's conclusion that the stipulation was in all respects valid, it is unnecessary to discuss defendant's argument that any error was invited by plaintiff and we refrain from doing so.

*The Terms of the Stipulation Were*
*Not Violated by the Questions Asked*

■ The stipulation provided in paragraph 3: "The parties' counsel of record, acting in consultation with the polygraph examiner so selected, shall mutually agree in writing in advance of said polygraph examinations to the exact wording of each question to be asked by the polygraph examiner."

---

[5]The conduct of counsel for plaintiffs was consistent with this assumption. When the court overruled his objections, he did not ask that other witnesses be heard.

A stipulation agreeing to the questions to be asked was signed by counsel. It did not specify what the questions were that were approved. There does not, however, appear to be any doubt that all the questions embodying the substance of the three questions set forth in paragraph 5 of the stipulation were presented to and approved by counsel before the beginning of the test. The testimony of Mr. Scarce, however, indicated that before any of such questions was asked, a so-called "true blue test" was administered to each subject. As explained by the witness, various numbers which are blue, red and blue, or red are shown to the subject and the subject is instructed to make various responses to questions concerning them which are truths, half-truths or lies. The purpose of this procedure is to establish the subject's pattern of response to truth and deception (e.g., in which of the polygraph channels he gives the best response), and to demonstrate to the subject that the polygraph does work, by showing him the chart.

Counsel for plaintiffs objected to the court's consideration of the results of the polygraph examinations on the ground that these preliminary control questions had not been agreed upon. The court considered this objection and overruled it. A finding of fact was made "that the polygraph examinations conducted of the parties on January 29, 1973, were in full compliance with the written stipulation of the parties filed January 26, 1973."

The basis for this finding was stated by the court in his oral statement of intended decision as follows: "With regard to the fact that the polygraph operator considered other questions, obviously, he has to consider other questions in order to settle norm as to which he is comparing answers to the critical questions. This does not affect the validity of the examination.

"I think both parties understood, when they went into this, that the polygraph examiner uses a technique of asking a number of questions with which he sets a norm and with which he exercises other techniques."

The judge was present during the in-chambers discussion from which the stipulation resulted and in which the parties indicated to the court that polygraph examinations "would be a more scientific way in determining the truth." He, therefore, had personal knowledge of the circumstances under which the agreement was made and was peculiarly qualified to interpret it. The court's interpretation was, moreover, consistent with the language of the agreement, which (1) does not

purport to limit the polygraph examiner in the techniques to be employed, and (2) suggests that it was the wording of the substantive questions which was to be the subject of advance agreement.

The administration of the "true blue test" did not violate the stipulation.

### The Opinion of the Polygraph Examiner Was Not Invalidated by His Allusion to Deliberately Attempted Overbreathing

 The report of the polygraph examiner referred to his observation that Mabel "deliberately attempted measured overbreathing in an attempt to prevent her charts from being interpreted" as a factor contributing to his opinion that her response to the critical questions was deception. Plaintiffs argue that this observation was outside the scope of the examiner's expert qualifications and made unreliable his interpretation of the results of the test. The trial court, having heard the extensive cross-examination on this question, disagreed and characterized the evidence in this respect as follows: "Regarding the overbreathing as to which Mr. Greenberg criticizes the polygraph operator before his conclusions, I don't believe that the polygraph operator as an expert here is not able to take into account all of the facts that he observes while giving a test.

"He felt observing Miss Robinson—and remember that his conclusions are based on his observation—that she was deliberately attempting overbreathing. It had evidentiary basis, not only in his own observation, but in the charts which he displayed here. And it was his conclusion that this was a deliberate attempt and was an indication of deception along with other indications of deception that he found in the results of his tests.

"I don't think the presence of that opinion vitiates or hurts the basic conclusion he came to at all."

The record of Mr. Scarce's examination fully supports the trial court's assessment of this element of the reasons given for the examiner's opinion. The witness pointed out in detail the difference between the charts of Mabel's normal breathing produced by the polygraph and the charts of Mabel's deliberately attempted overbreathing, and demonstrated that the overbreathing did not obscure the indications of deception found in the other channels of the charts. The polygraph examiner's

explanation of the observation that deliberately attempted overbreathing "in itself is indication of deception" demonstrated that this was a matter within the field of his expertise. It was based upon observation of the high incidence of correlation between such overbreathing and the existence of other indications of deception in the course of his long experience in the administration of polygraph examinations.

In any event, the determination of the credibility and weight to be given to the testimony of experts is made "by the trier of fact and not by an appellate tribunal." (*Stern* v. *Krasne,* 130 Cal.App.2d 818, 821 [280 P.2d 45]; see also *Estate of Schmidt,* 261 Cal.App.2d 262, 272 [67 Cal.Rptr. 847]; *Douglass* v. *Webb,* 209 Cal.App.2d 290, 297 [26 Cal.Rptr. 60].)

The evidence with respect to the qualifications, the opinions and the reasons for the opinions of the polygraph examiner was more than substantial and fully supported the court's findings in accordance with his testimony: (1) that defendant was telling the truth when he denied having intercourse with Mabel during the period of conception, (2) that Mabel's contrary assertion was deception, and (3) that Mabel's denial of intercourse with other men during this period was deception. The judgment of the court dismissing the action followed as a logical necessity from these findings, which foreclosed any possibility of defendant being the father of Joseph.

The judgment is affirmed.

Cobey, Acting P. J., and Allport, J., concurred.